RICHARDSON VS RICHARDSON.

*Questions, as to bills filed for divorce.*

1. Adultery charged in a bill filed in Chancery, for divorce, while not necessary to be established by direct testimony, should be shewn by such facts as would lead to the inference, *as a necessary conclusion*, that it had been perpetrated.

2. Where a bill filed to effect a divorce, charged adultery, against the defendant with one, who was proved to have been a widow, at whose house the defendant occasionally stopped, in passing the road, who had bastard children, reputed to be those of defendant; and whom defendant removed to near his dwelling, he frequently being seen at her house, and paying for a loom set up there; and whom the witnesses supposed, *from circumstances*, might have lived in adultery with the defendant;—it was held that these circumstances did not make out the adultery, with the certainty required by the rule established in Chancery.

3. The admission or confession of a defendant in his answer, cannot establish adultery, or authorise Chancery to decree in reference to it, without proof of the fact.

4. And this rule applies in cases of divorce, either *a vinculo* or *a mensa et thoro*.

5. This Court recognizes the doctrine, that an adulterer cannot resist a sentence of divorce, by setting up desertion.

6. Chancery will not award costs against a wife, who files a bill for diverce—though she may be unable to prosecute the case to a successful issue.

7. And it seems, it will direct the husband to pay over to the *prochien amy* funds, sufficient to prosecute the suit to a final hearing: and will award the wife, aliment, *pendente lite*.

On writ of error to a decree of the Circuit Court of Washington county, exercising chancery jurisdiction.

CASES DETERMINED

This was a bill for divorce, by Lucinda Richardson against her husband, John Richardson.

The bill stated that complainant, entered into matrimony with the defendant, in the year eighteen hundred and ten. That the union on her part, was one of affection, rather than of prudence, and that from it, she had long cherished the hope of deriving happiness and contentment. That this anticipation, oratrix had found vain and delusive, for though her conduct from the day of marriage, up to the time of exhibiting the bill, had been dutiful, loyal and affectionate, she had received at the hands of her husband, little else than coldness and neglect, frequent personal chastisement, and brutal insult and abuse: That for a long period, she had suffered defendant's conduct, with fortitude and resignation, hoping that the increasing number of the pledges of her affection, which she had borne, would awaken in his breast, some tenderness at least towards the mother of eight living children. That this hope was visionary,—for about the year eighteen and twenty-nine, the defendant formed an adulterous connection with one Charlotte Richardson, a common prostitute, and had carried her to the dwelling of oratrix; had built her a house within two hundred yards of oratrix' residence, and lived with the said Charlotte in open adultery, continually afterwards: That in addition to this deep wound upon the honor and feelings of oratrix, the defendant had added to the cruelty already inflicted, and treated oratrix in a manner to justify her in the belief that her life was endangered: And that urged by defendant's threats, that he would take her life, oratrix had sought refuge with an aged mother, on

whose kindness she had subsisted for four years. Oratrix further represented, that of her eight children, living, and borne to the defendant, two were daughters, grown to woman's estate, and whom their father, regardless of the duties of a parent, had reduced to the degraded state of servants and slaves to his paramour—compelling them to perform the most menial offices to the said prostitute, and keeping five others of her children with him, in a state of nakedness and destitution, deprived of that greatest of all blessings—a mother's soothing care,—and daily witnesses of a father's disgraceful and immoral conduct. That the said defendant at the time of oratrix' intermarriage with him, was very poor, and that despite his indolence and drunkenness, oratrix had husbanded the estate advanced to her from her parents, until it had increased to a considerable property.

The bill, after enumerating the items of which the said estate consisted,—prayed a dissolution of the bonds of matrimony between herself and her husband; prayed a separation of her children from her husband, alimony, and writ of *ne exeat.*

The Chancellor on the filing of the bill, awarded an order by which oratrix was secured the sum of five hundred dollars, during the pendency of the suit.

The answer of the defendant stated—

That true it was, respondent had entered into marriage with complainant, about the year stated in the bill; and he also hoped from their union to realize happiness and comfort, and that his wife would have demeaned herself, as an amiable, sociable and agreeable companion, and prove an industrious, prudent and careful housewife and mother; but so it was, she

soon exhibited a temperament, the contrary of these, and proved exceedingly lazy, taking no care of her family or domestic affairs, and thus wasting respondent's property: That she was passionate, sullen and stubborn, and had treated the respondent with insulting silence, scorn and neglect, though he had never given her cause for such conduct, but had exercised towards her tenderness and humanity. In relation to the charge of adultery, respondent expressly averred, that for more than one year after his wife left his house, he had not been guilty of an act of infidelity, in connection with Charlotte Richardson: That Charlotte, did not, as charged, remove into a house near respondent's residence, until after a year from the time complainant abandoned his bed and board: That Charlotte was the widow of his cousin, who died poor, and that she had lived within three hundred yards of respondent's house with one Sullivan, from whom respondent purchased the house; and where Charlotte had lived afterwards. The answer denied having suffered his daughters to act as the menials of Charlotte, or to become spectators of vice; but averred having given them an education suited to their station in life. That the children were attached to him, and that four of them, after they had been placed with their mother by mandate of the Court, had returned voluntarily to him.

Touching the charge of abuse and cruelty, respondent admitted, that upon one or two occasions, urged by provoking language, he had offered violence to the person of complainant, using a small peach or quince switch; and once giving her a slap upon the cheek with his open hand. Respondent denied the

charge of excessive poverty, when he intermarried with complainant, being as he alleged, worth at that time, one hundred dollars or more; but confessed having the possession of sundry slaves, and other property, obtained through his wife.

The most material portion of the evidence, established in the cause, was—that Charlotte Richardson was a widow, living near the house of defendant, near the public road: That she lived there without visible means of support, and had borne several children; and that defendant had been occasionally seen at her house, and had paid for a loom set up there.

The Chancellor below dismissed the bill, at the costs of complainant.

And this was assigned in error here.

The cause was argued by *Sallee* for the plaintiff in error, *Gibbons*, contra.

GOLDTHWAITE, J.—This suit was instituted in the Circuit Court of Washington county, in January eighteen hundred and thirty-four, and is a bill in equity, by means of which, the complainant seeks to procure the dissolution of a marriage, contracted between the defendant and herself, in the year eighteen hundred and ten.

The complainant alleges, in terms well calculated to excite the sympathies, that she has borne to the defendant eight children, all living pledges of her affection to him, whom she charges to have treated her at all times with coldness and neglect, and frequently with personal chastisement, brutal insult and unmanly abuse.

She further charges him to have formed an adulterous connexion, about the year eighteen hundred and twenty-nine, with one Charlotte Richardson, a common prostitute, whom he brought to the dwelling of the complainant, built for her a house, but a short distance therefrom, and has ever since lived with her in adultery.

She also charges, that she entertained serious apprehensions for her life, from his cruelty—he having declared in the most solemn manner, that he would take her life, but for the fear of the law; compelled by this cause, she sought refuge with her mother, on whose kindness and bounty she had subsisted for the last four years, previous to the exhibition of her bill.

She alleged moreover, that two of her children are daughters, grown up to woman's estate, whom the defendant, regardless of the duties and feelings of a parent, had reduced to the degraded state of servants and slaves to his paramour, compelling them to perform the most menial offices to that prostitute:— That the other children remaining with him, are in a state of almost entire nakedness, destitute of the soothing attentions of a mother, and daily witnesses of the disgraceful, immoral and adulterous conduct of their father.

The bill also sets forth, a statement of the personal estate held by the defendant, and alleges that nearly the whole of the same, was obtained by reason of his marriage with the complainant.

She prays that the marriage may be dissolved, the property devided as may be just and equitable, that the custody of the children may be committed to her, and for general relief.

The answer is in a tone of sufficient asperity, to shew the state of feeling between the parties to have been of a most unpleasing description. The complainant is charged to have been exceeding lazy, indolent and taking no care of the family—with permitting every thing to be wasted, neglected and destroyed—with being petulent, passionate and oftentimes sullen and stubborn,—at times exhibiting the greatest passion and fury, and then remaining silent for weeks.

The defendant admits that he has more than once inflicted personal chastisement on his wife, by whipping her with small peach or plum tree switches, and once by striking her with his open hand,—but this he excuses by reason of being provoked thereto, by her excessive abuse, taunting and provoking language, combined with her insufferable neglect.

In relation to the particular and specific cause of offence, set forth in the bill, the defendant alleges, " that at the time his wife left his house and for more than a year subsequent thereto, he never had been guilty of an act of infidelity to his wife, in connexion with Charlotte Richardson, and that she did not remove into the house, near the dwelling of the defendant, until more than a year subsequent to the time his wife left his bed and board."

The answer denies in general terms, any cruel treatment, and insists that the defendant has conducted himself to his children, as a kind and affectionate father; that he neither permits them to see or learn any thing which is improper, and that they are all well satisfied with their condition in life, and desire no change.

4P. 60

It must appear to all, that if the facts as they are charged, actually exist, there could be but little difficulty in establishing the same by evidence, which would be perfectly satisfactory in its character; but that disclosed by the record, produces no such conclusion—the examination of the witnesses was evidently conducted by those unskilled in the art, or not aware of the importance of presenting *facts* for the consideration of the Court, and although *enough* is disclosed to induce the belief that the witnesses knew *more*, and could perhaps have *stated facts*, which, if disclosed, might have established the material allegations of the bill—yet it would be highly dangerous, as well as manifestly illegal, for any Court to act on facts which might, but which have not, been established by testimony.

It has been urged with great force, that the same measure of testimony should not be required to establish the crime of adultery, against him who is shewn to entertain a feeling of disgust and dislike to his wife, as against one whose daily intercourse is of the most friendly and harmious description—but it cannot be said that the mere existence of such feelings will authorize a Court to infer the commission of such an offence, without *some* evidence within the established rules.

It is said, however, that the proof brings the defendant within the rules of evidence applicable to cases of this character—that the fact is not necessary to be established by direct evidence, but may be inferred from other facts.—That if a married man is seen at a brothel, and remains there a sufficient time, in a room with a common prostitute, to commit the act,

adultery shall be inferred.—*Astly vs Astly.** The general rule is laid down with more clearness and brevity in the case of *Loveden vs Loveden.*† "It is a fundamental rule that it is not necessary to prove the direct fact of adultary. The fact is inferred from circumstances that lead to it by fair inference *as a necessary conclusion.* Now the only facts proved in this case, seem to be that Charlotte Richardson was a widow, living on the public road in the country, and that the defendant had been seen to call there for a a few minutes in passing the road.

It is said that here is a married man, going into a brothel, &c.—but no evidence is shown in the record to establish any fact which can legelly induce the conclusion that this female was then a prostitute.

The subsequent facts proved, are that she was removed in eighteen hundred and twenty-nine or eighteen hundred and thirty, to a house near the defendant, by a slave belonging to him—that she has since had two bastard children, of which he is the reputed father, and that he has been seen at her house.

The witnesses state that they know nothing of their own knowledge, but from circumstances, they should think that the defendant and Charlotte Richardson had been living, or might have been living in adultery since about eighteen hundred and twenty-nine. It is also proved that he paid for a loom which was put up in her house.

If we test these facts by the rule before referred to, can we arrive at the conclusion of adultery committed.

The reputation of the paternity of the children, is certainly not the legal way to establish it, nor can it

*1 Hagg. 714.

†2 Hagg 1. 4 Ec. Rep. 461.

weigh—neither can we infer what the circumstances are, which the witnesses do not state. Does the paying for the loom—the moving of the woman by the slave or by his master—the proximity of residence— the being seen at her house—no circumstances of suspicion being stated, or the bearing of bastard children by her, with the reputation of Richardson's being their father—bring this case within the general rule before stated.

We look in vain for any *fact*, which by fair inference will lead to adultery *as a necessary conclusion.*

Before dismissing the consideration of the evidence in this cause, it may not be improper to advert to the general rules which are understood to prevail in the ecclesiastical Courts on the subject of allegation. It is believed to be the uniform practice of these Courts, to require that all the facts should be alleged with such convenient certainty, of time, person and place, as will enable the defendant to meet the charge with proof. How far the adoption of similar rules may be necessary or expedient in this State, is one point on which the Court will not now express any opinion.

But it is said that no evidence was necessary in this cause—that the material fact of adultery is admitted by the answer, and that a decree must be the consequence—that the statute directing that the confessing or admission shall be received, was only to prevent collusion, and ought not to apply to cases where no collusion exists, and where none can be apprehended.

All the various statutes on the subject of divorce, seem to have copied very closely from the rules which have obtained in the ecclesiastical Courts of England,

RICHARDSON *vs* RICHARDSON.

and perhaps the exposition which has been given to these rules, will be found to afford good, if not the best rules of construction, for our statutes.

That confessions, shall not by themselves, be admitted to establish the fact of adultery, is a well settled rule of those Courts, and is one of the established canons of the English church, adopted in the year sixteen hundred and three,—and the unvarying decisions of the Courts of Doctors Commons have applied it to all cases of divorce, whether final or temporary. Some doubt seems to have existed, whether the most solemn confession, without some fact proved, leading to act, would, of itself justify the husband in withdrawing from the bed of his wife.— *Mortimer vs Mortimer.** [*2 Hagg. 310; 4Ecc Rep. 547, and cases there cited]

This case is believed to settle the construction which the canon of the church has received—indeed, it would be impossible, to say how far any rule, which should attempt to attach facts to a confession, would be of any real service : for, if the confession would not be received by itself, it is difficult to conceive how any fact, not conclusive in itself, would aid it. Be this as it may, our statute has not left the discretion to any Court, to receive aid from a confession. It is found,† "In order to prevent collu- [†Aik. Dig. 131.] sion between the parties, *in no case*, shall the confession of them, or either of them, be taken or received as evidence, *in any case of divorce.*"

It was a subject of some doubt, with the Court, whether the object of the legislature being apparent, to prevent collusion, and there being no danger, or not such great danger of this, in cases where the divorce was not *a vinculo*, a Court would not be au-

thorised to decree a divorce *a mensa et thoro*, on a confession merely; but such a practice seems never to have obtained in the English ecclesiastical Courts, under a canon certainly not so obligatory in its terms, as our statute, which applies to all cases of divorce, whether final, or otherwise. A similar rule obtains in New York.*

* 1 Johns. Ch. R. 197

We have, therefore, been reluctantly drawn to the conclusion, that the admission or confession of the adultery, in the answer, would not authorise the Court to decree, without proof of the fact, in the ordinary method, provided for, by the rules of law,—and our regret is the greater, because, in the case before us, the answer seems very distinctly to admit the crime charged; but to rest its excuse on what is termed by the ecclesiastical Courts, *compensatio criminis*, setting up the desertion of the wife from his house, in eighteen hundred and twenty-nine, as a bar to her relief. If such was admitted, it would not bar the relief.—Even a malicious desertion will not bar a sentence of divorce, for adultrey.—*Sullivan vs Sullivan.*†

†2 Ecc. R. 314.

The charge of cruelty, is the only one remaining to be considered; and without examining the mode of its allegation, either as general or particular, so as to enable the defendant to answer or disprove the fact, it is sufficient to observe, that on this point, there is a total defect of testimony.

The Court below dismissed the bill at the costs of the complainant, and it does not appear, in any part of the record, that she prosecuted her cause by a *prochien amy*, who would, alone, be responsible for costs. It was manifestly improper to render any decree

against her, for costs, in a suit prosecuted against her husband, under any circumstances; but, in this case, the Court is of opinion, that he should have been compelled by the decree, to pay the same—as, from the admissions of the answer, it appears that she had probable cause for instituting her proceedings; although she may not have been able to prosecute the case to successful issue.

He would also have been directed, in the earliest stage of the proceedings, to pay over to her *prochien amy*, a sufficient sum of money to prosecute the suit to a final hearing; and she should have been alimented *pendente lite*—as the husband would thus have been responsible for the costs, there would have been neither hardship or impropriety, in decreeiug the same against him, independent of the admissions of the answer.

It might also have been proper, for the Court below, under peculiar circumstances, to have dismissed the bill, *but without prejudice*, though such a decree is understood to be matter of discretion with the Court—and which exercise of discretion could not be reviewed.—But as this question has not been argued, no opinion is necessary on this point—the more especially as, from the facts charged by the bill, and disclosed by the answer, it is not improbable, that the causes which induced the exhibition of the complaint, may have continued since the suit was instituted.

It is the opinion of this Court, that there is no error in the decree, so far as it directs the bill to be dismissed—and that there is error in the same, so far as it directs the dismission, at the costs of the com-

plainant,—for which error it is reversed; and this Court, proceeding to render such decree as should have been rendered by the Court below, doth order, adjudge and decree, that the said bill of complaint be dismissed, and that the said John Richardson, the defendant therein, shall pay all the costs of this Court, and of the Court below.