## JONES v. JONES.

1. A consent by husband, and wife, to live apart, does not authorize either to charge the other with a desertion from bed and board, with the intention of voluntary abandonment.

Writ of Error to the Court of Chancery sitting in Greene county. Before the Hon. D. G. Ligon, Chancellor.

The plaintiff in error filed his bill, stating the marriage of himself and the defendant, together with other appropriate facts, alledging that she had voluntarily left his house, bed and board, more than three years, and had voluntarily remained away ever since, with the intention of abandoning him; and thereupon praying a divorce *a vinculo matrimonii.* The defendant answered, admitting the marriage of herself and the plaintiff, and that she had left his bed and board more than three years, but denying she had done so *voluntarily,* with the intention of abandonment—and further insisting, that the plaintiff not only consented, but was anxious they should live apart, &c. Accompanying the answer, a deed is exhibited, entered into by the parties more than three years after the defendant left the plaintiff's house. This deed recites the separation of the parties—their intention never to live together again, and in consideration thereof, the plaintiff makes a settlement upon trustees for the support and maintenance of the defendant, who join in the deed, and enter into the usual covenants on her behalf.

Many depositions were taken at the instance of each party, but the view taken of the cause by this court, does not require that the facts should be here recited. The chancellor was of opinion, that the plaintiff did not only consent the defendant should leave his house, but was anxious that she should do so—and that both parties had sanctioned their

19

separation; thereupon he dismissed the bill at the complainant's cost.

J. ERWIN and W. M. MURPHY, for the plaintiff in error, cited Clay's Dig. 170, § 3; 3 Taunt. Rep. 421; Shelf. on Mar. and Div. 417, 418, 429, 430, 431, 432, 433, 434, 445, 625.

J. B. CLARK, for the defendant, cited 1 Eng. Ecc. Rep. 200, 208; 3 Id. 329, 335; 4 Id. 338, 358; 3 Pick. R. 503, 299; Holc. Eq. 129; 5 Ala. Rep. 76; 1 Johns. Ch. R. 491; 4 Id. 503; Shelf. on Mar. and Div. 427, 428, 432 to 456; Paley's Philo. 204, 206, 211.

COLLIER, C. J.—Marriage is a contract of a peculiar nature, and differing in some respects from all others, so that the rules of law which are applicable in expounding and enforcing others, may not apply to this. Its foundation, like that of all other contracts, rests on the consent of the parties; but the rights, obligations or duties arising from it, are not left entirely to be regulated by the agreement of the parties. These are, to some extent, matters of municipal regulation, over which the parties have no control by any declaration of their will. Unlike other contracts, it cannot in general, amongst civilized nations, be dissolved by mutual consent; and it subsists in full force, even although one of the parties should be forever rendered incapable, as in the case of incurable insanity, and the like, from performing his part of the mutual contract. Shelf. on Mar. and Div. 16.

Malicious desertion, though a ground of divorce in some countries, is not thus recognized in England. 2 Addams' R. 302, 303; 1 Hagg. Cons. Rep. 120, 154; 1 Hagg. Ecc. R. 784. But our statute of 1832, "amendatory of the laws concerning divorce," enacts, that "the several chancery courts of this state are hereby invested with full power and authority to decree divorces in the manner prescribed by law, and in the following cases, that is to say: in favor of the husband, where his wife shall have been taken in adultery, or valuntarily left his bed and board for the space of three years, with intention of abandonment; and in favor of the

wife, where her husband shall have left her for the space of three years, with intention of abandonment; or where he shall have abandoned her, and lived in adultery with another woman; or where his treatment of her is cruel, barbarous or inhuman." Clay's Dig. 170, § 3. Although the general terms of this enactment might embrace a mere consensual arrangement between husband and wife, under which the latter left the bed and board of the husband, and continued separated from him for three consecutive years, with the intention of abandonment, yet we apprehend that no one would contend for such a construction. Whatever may be the effect of the statute when correctly interpreted, it never was the intention of the legislature to detract from the sanctity of the matrimonial contract—to allow husband and wife of their own volition and mutual pleasure, to separate, and at the expiration of the prescribed period of abandonment, to grant a divorce to the party who continued to occupy the premises where they had lived together. Nothing of this kind could have been intended. The introduction of such a term into the contract of marriage, would have made it easy of dissolution, and greatly have impaired its value as a moral and social institution.

But the act of 1820, "concerning divorce," declares, that the decree pronounced by the court shall not operate so as to release the offending party, and thus indicates that a mere consent to live apart, in which each party may be alike faulty, does not authorize either to charge the other with a desertion of bed and board, with intention of voluntary abandonment. And such has been the practical construction of the statute, as well by the courts as the legislature.

What are the facts of this case, so far as it is material to notice them? From the testimony of the nearest relatives of the parties, and those most intimate about their house, it is satisfactorily shown, that their tempers and dispositions were unsuited to each other; and instead of harmonizing in their views, their affection soon lost its vitality. In less than nine months after their marriage, each seemed to be

willing to separate from the other, and desirous to have the terms of separation adjusted. The defendant became very offensive to the plaintiff, and the plaintiff frequently signified to her, her brother, in whose family she had previously lived, as well as other persons, his anxiety for her to leave his house—having withdrawn himself from her chamber some five months after they were married, for what he regarded as a grievous insult to his feelings. Under this state of things, which promised no hope of reconciliation, the defendant, after living in the plaintiff's house about nine months, left it, went to her brother's, who lived not more than two miles distant—has not since returned to the plaintiff, or been requested to do so. A few days after the expiration of three years from the period of separation, a deed was executed, providing for her support, and stipulating for a perpetual disunion. Here then is a case in which, although the wife leaves the husband's house, each agrees with the other to dissever their fortunes. It does not establish the allegation that the wife had left the husband's bed and board with intention of voluntary abandonment—it does not put the wife in fault, so as to authorize the husband to demand a divorce. We need not consider whether the articles of separation, being executed more than three years after the defendant left the plaintiff's house, could affect the right to a divorce, if it was otherwise made out by proof.

We have purposely avoided considering the testimony more in detail, as it could subserve no other purpose than to awaken unpleasant recollections, and open still deeper, wounds which, though not healed, may have become less painful, because they have become chronic. It remains but to add, that the decree of the chancellor is affirmed.