## GRAY v. GRAY.

1. In a bill for divorce, an averment of the marriage, of the residence of complainant in this state for three years, next preceding its exhibition, and of the abandonment of the husband, for the space of three years, without the intention of returning, is sufficient.  The readiness and willingness of complainant, at all times during the abandonment, to receive and live with her husband, need not be averred.

2. A wife is not entitled to a divorce from her husband, on the ground of abandonment for three years, without the intention of returning, where, by her conduct, she has driven him from her society, and has continuously denied him the *locus penitentiæ*, and privilege of returning.   In such a case her consent to the separation must be intended.

3. Declarations made by the husband, of his intention not to live with his wife, can not operate as an estoppel, in a suit for a divorce, instituted against him by the wife, on the ground of abandonment.

4. Where a wife refuses to accept the provision, made for her support, by the husband, but elects her own place of residence, in contravention of his wishes, she can not complain, that he does not provide for her.

5. As a general rule, in chancery proceedings, the costs may be taxed upon either party, at the discretion of the court, but it must be a legal discretion, exercised in accordance with general rules, and former precedents.

6. Under our statutes, the reason of the English rule, that the wife is a privileged suitor, as to costs, does not apply, and a court of chancery may, as in other cases, tax the *prochein ami* of the wife, with the costs of a suit instituted by her, for a divorce from her husband.

Gray v. Gray.

Error to the Chancery Court of Lowndes.  Before the Hon. Joseph W. Lesesne, Chancellor.

THE facts of this case are sufficiently stated in the opinion of the court.

JUDGE, WATTS & JACKSON, for plaintiff in error.

1. Though this is a civil case, yet the facts are criminal, and the consequences of the decree, serious and final; therefore, the strictest proof should be required.   Evans v. Evans, 4 Eccl. Rep. 313, 342.

2. To entitle the wife to a divorce, the abandonment must be without fault on her part.   Taylor v. Taylor, 6 Eccl. R. 81; Warring v. Warring, 1 ib. 210; Best v. Best, 2 ib. 163. These cases were for divorce, on the ground of cruelty; but the same principle must apply in the case at bar.   See also 2 Kent, latest ed. p. 128; Hill v. Hill, 6 Law Rep. 174.

3. When the abandonment is by mutual and persevering consent, (although this would be ground of divorce according to the civil law: see Sto. Confl. L. 169,) no divorce will be granted to either.   See 11 Ala. 628; Jones v. Jones, 13 Ala. 145; 4 Eccl. Rep. 298, 349.

4. If the evidence shows an abandonment on the part of the husband, still the wife cannot obtain a divorce, because the proof shows that she was as much to blame in the separation as he was.   This is evidenced by her avoiding him on all occasions; by refusing to take the school provided for her at Terry's; by instituting the suits at Wetumpka chancery court; and in unnecessarily running him in debt.   She has no right to complain of a separation which she was active in perpetuating, if not in procuring.   See Whittington v. Whittington, 2 Dev. & Bat. 64.   She showed her willingness to a separation, and her anxiety for it, by instituting the suits for cruelty, to make the separation perpetual.   Did the legislature ever intend to give any person a remedy for that to which he and she, either directly or indirectly, expressly or impliedly, assent?   See Jones v. Jones, 13 Ala. supra.

5. She should have held herself ready, during the space of three years, to return to the matrimonial bed whenever the husband sought it.   See Hill v. Hill, 6 Law Rep. supra.

6. The cruelty charged in the bill, and abandoned at the hearing of the cause, cannot aid the charge of abandonment. See Pidge v. Pidge, 3 Metc. 257.

7. As to the confessions of parties, see Clay's Dig. 171, § 16; Richardson v. Richardson, 4 Porter, 476; 11 Ala. 628; 4 Eccl. Rep. 546; Story's Eq. Pl. § 263, and 265, a. The Alabama statute excludes them in all cases, not merely where there is collusion, as some of the cases cited by the defendant's counsel, show to be the case of other states. The object of the statute was to prevent the court from being imposed on by the collusive acts or declarations of the parties; and in order to do this effectually, it provides, that in no case shall the confession of either party be taken or received as evidence, in any case of divorce.

BOLING and STONE, contra.

1. All the allegations of the bill are substantially proved by the testimony.

2. Defendant left complainant in March, or April, of 1842, at the house of Lewis C. Gaines, in Dallas. Complainant received no assistance there from defendant, except money due him there, to get to her friends in Autauga, and this without his consent. She never received any assistance from him afterwards.

3. The conduct of defendant, when complainant followed him to Vernon, shows he left her at the house of Gaines, with intention of abandonment.

4. The records in the first suit are not evidence here. Adams v. McMillan, 7 Por. 73.

5. The answer of defendant is no evidence for him. Moyler v. Moyler, 11 Ala. 620.

6. The declarations of defendant, at the time his wife returned to him, or followed him to Vernon, are evidence as part of the *res gestæ*. 11 Ala. R. *supra*. Also his declarations at Mrs. Price's. Dillon v. Dillon, 3 Curtis's Eccl. Rep. 397; 7 Eccl. Rep. 397; 2 Littell, 337; 4 How. (Miss.) Rep. 112; 11 Pick. 461; 1 Johns. Ch. R. 198.

7. Neither the complainant, or next friend, is liable for costs, no matter how the case goes. Richardson v. Richardson, 4 Por. 478.

8. The complainant acted upon the declarations of her husband, in declaring he did not intend to live with her, or do any thing for her. Not until then did she file her bill. He is bound by these declarations. 1 Greenleaf's Ev. § 27, 207, 209.

9. The decisions in the N. Hampshire Reps. are founded upon a statute, which requires the abandonment to be without sufficient cause. The language of the Kentucky statute is similar to ours.

CHILTON, J.—The defendant in error, filed her bill in the chancery court of Lowndes county, for a divorce from her husband, Joshua Gray, alleging cruel treatment, as also, that he had abandoned her, without the intention of returning, for the space of three years, next before the filing of the bill.

Upon the trial in the court below, the complainant abandoned the ground of cruelty, and relied solely upon the alleged abandonment, for relief.

It is insisted in this court, by the counsel for the plaintiff in error, that the allegations of the bill are insufficient, in as much as there is no averment that the complainant, during the period of abandonment, was at all times, ready and willing to live with and receive her husband. The case to which we have been referred by the counsel, of Richardson v. Richardson, 4 Port. Rep. 476, does not sustain this position; and we are clearly of opinion, that the allegation of the abandonment, is sufficiently set forth, and that if the wife rejected efforts for reconciliation, and refused to receive the husband, or to live with him, this may be shewn by him as matter of defence, but it is not indispensible as an averment of the bill, that she should show such willingness. It is sufficient for the bill to aver the marriage,—that the complainant has resided in this state three years next before its exhibition, and that the husband has left her for the space of three years, without the intention of returning. This, the bill in this case does, and although many superfluous allegations are superadded, they do not vitiate, but at most, would be regarded as surplusage.

The framers of our constitution, seemed to be fully sensible of the great importance, of preserving indissoluble, as far

as practicable this, the most sacred of all the domestic relations. Hence, they declared, as a part of the fundamental law of the state, " that divorces from the bonds of matrimony, shall not be granted but in cases provided for by law, by suit in chancery : and no decree shall have effect, until the same shall be sanctioned by two thirds of both houses of the general assembly." Our legislature, influenced by the same wise policy, in respect to divorces, have, in the language of the learned judge, in Moyler v. Moyler, (11 Ala. Rrp. 622) " accumulated expressions as if for the purpose of hedging it around with difficulties." ·

It is to be feared, from the frequency of divorces, that this policy, conceived in the profoundest wisdom, has not at all times been carried out.   This, doubtless results, not from want of respect for the law, but from the imperceptible influence, which feelings of sympathy, and humanity, exert over the mind, begetting a desire to have those separated, who, themselves, so ardently desire to be separated, and whose union promises nothing of harmony or happiness.   "We need not," says an elegent writer on the subject, " be afraid of drawing the marriage, knot, which chiefly subsists by friendship, the closest possible.   The amity between the persons where it is solid and sincere, will rather gain by it; and where it is wavering and uncertain, this is the best expedient for fixing it.   How many frivolous quarrels and disgusts are there, which people of common prudence endeavor to forget, when they lie under the necessity of passing their lives together, but would soon be inflamed into the most deadly hatred, were they pursued to the utmost under the prospect of an easy separation." (See Shelford on Mar. and Div. 307.)

In the decree before us, the chancellor has taken a very correct general view of the subject ; but we have examined and analized the testimony upon which the decree is predicated, and are constrained to pronounce, that it does not authorize a sentence of perpetual separation between the parties, and of celibacy on the part of the husband.   It would subserve no good purpose to extract, and embody in this opinion, the testimony of the numerous witnesses, who have been examined on both sides of this controversy, and thus publish to the world the history of their petty difficulties,

and indiscretions. We need only say, that we are fully satisfied from the proof, that both parties are in the wrong: that while the conduct and conversation of the husband, have exhibited a want of that manly forbearance, delicacy and tenderness, which should characterize the deportment of his sex, towards " the weaker vessel ;" the wife has not left him without apology, in her want of conformity to his wishes, her peevish, fretful disposition, and occasional use of epithets calculated to wound his feelings, and render her society unpleasant to him. We do not think that when he left her in Dallas county, and went to seek another situation for teaching school, that he entertained the idea of deserting her. It was not until she refused to accept the situation he had procured for her in the family of Mr. Terry, that he was provoked to declare his intention not to live with her any longer. It is however, clear, from her conduct, both then and subsequently, that she readily acquiesced in his determination, and that she was perhaps, more determined than he, upon the separation ; for such was her aversion to him, that at her request he was forbidden to visit the house at which she was boarding, and upon one occasion, was actually ordered off the premises, by the proprietor. True, the witness swears it was not at her request; but that she had previously expressed her desire that he should not be allowed to visit the house. Upon another occasion, it seems they had mutually agreed to enter into articles of separation, and were dissuaded by a mutual friend from consummating such arrangement. These facts, connected with the other circumstances in proof, showing her strong disinclination to have any interview with him, and the several efforts she has made since the separation, and before the expiration of three years, to obtain a divorce, followed also, by an indignant repetition of a proposition for reconciliation, before the exhibition of this, which is the third bill she has filed for divorce, since their differences commenced : all satisfy the mind, that the separation was not only agreeable to her feelings, but that she has contributed to its continuance by all the means in her power. If a husband leave the wife, without the intention of returning, to entitle her to a divorce, she must not, by her conduct, have driven him from her society, and have continuously denied him the *locus*

*penitentiae*, and privilige of returning; for in that event, we must intend the separation was by her consent, in which case, she is not entitled to a divorce. Jones v. Jones, 13 Ala. Rep. 145.

Lord Stowell in his learned decree, in Evans v. Evans, 1 Hagg. Cons. Rep. 36, 37, has well remarked, "If two persons have pledged themselves at the altar of God, to spend their lives together, for purposes that reach much beyond themselves, it is a doctrine to which the morality of the law gives no countenance, that they may by private contract, dissolve the bonds of this solemn tie, and throw themselves upon society in the undefined and dangerous characters, of a wife without a husband, and a husband without a wife."

Although in the case before us, there is no special agreement between the parties to live seperate from each other, yet the conclusion deducible from the whole proof is irresistible, that such separation was mutual. That while the husband declared more than once that he would not live with his wife, she at the same time gave indubitable proof that he should not do so. Under such circumstances to give their separation the sanction of law, by granting a divorce, would be to afford a preceden twhich would tend greatly to weaken the bond, of matrimonial cohabitation, much of the hapiness of which depends upon its indissolubility.

The doctrine of estoppel, as applicable to the declarations of the husband, insisted upon by the counsel for the defendant in error, has no application to cases of this character. The husband could not by the sworn admissions in his answer entitle the wife to divorce, much less could his admissions not under oath, and out of the record, have that effect. The object of the rule is to prevent collusion between the parties, and to this end the statute expressly provides, that "in no case shall the confession of them, or either of them be taken or received as evidence in any case of divorce."

It may not be improper, in conclusion to remark, that the parties in this case appear to be educated, respected, and intelligent. They have an infant daughter, the object of their mutual attachment and solicitude, and the husband swears in his answer that he has a strong attachment for his wife. In view of these facts it seems to us that the affection they have

Vol. 15—99

for their offspring, who must otherwise share their misfortune, the respect due to public decorum, and a high sense of moral duty as well as a proper regard for their own comfort and peace, should induce them to forget the past, and in a spirit of reciprocal forgiveness and conciliation, to live together as husband and wife. We see no reason why they may not do this, and render easy the yoke, which the law, under the circumstances of this case, does not allow them to cast off.

In respect to the husbands failure to support the wife, after she went to Vernon, upon which some stress has been laid, we have only to say, the proof shows he was poor; that she was unwilling to keep house on account of her delicate health, and being unwilling to undergo the drudgery incident to housekeeping. That he had made arrangments for her living at Mr. Terry's, and to provide her a nurse; but contrary to his wishes, she declined to reside there, and went to reside with another family, one of the members of which he esteemed inimical to him. She cannot, then, complain that he did not provide for her, when she exhibited no disposition to accept the provision which he made, and elected in contravention of his wishes, her own place of residence. Besides, she has had a proceeding in chancery, continuously in progress against him for divorce, since April 1843, and she could readily have obtained alimony, if she had brought herself within the provisions of the law, by an application to the chancery court, in which she was proceeding. See Richardson v. Richardson, 4 Por. Rep. 479.

As to the matter of cost, we have felt some hesitation. The statute declares, " That costs in chancery shall be paid by either party, at the discretion of the court"—Digest 350 § 26. This statute but affirms a general principle, which obtained as the law, before its passage. But although the court has a discretion with respect to costs, it is not to be understood that it should give or withhold costs at pleasure, but may, it is said, exercise a legal discretion, in accordance with general rules and former precedents. Goodall v. Whitmore, 2 Hagg. Eccl. Rep. 374; Shelford on Div. 531. It is laid down by the author last cited, page 533, that in suits instituted either by the husband or the wife, the wife is a privilged suitor, as to costs and alimony. The reason which

lies at the foundation of this doctrine, is, that the wife is presumed to have no separate property ; but by the marriage, it is supposed the whole property vests in the husband.    Hence it is laid down as a general rule, " that the husband must pay the cost incurred by the wife in suits for divorce."    Shelford, 533.   And the cost, it is said, may be taxed, *de die in diem*, so that the wife may not be put to inconvenience or delay, in prosecuting her suit.    So also, when she is required to live separate from her husband, the court will grant alimony, *pendente lite.*    Such was the decision of this court, in Richardson v. Richardson, supra, and we think it accords with the practice of the ecclesiastical courts of England. · Shelford 534, and authorities there cited.   But by the act of 1841, "No *feme covert* shall file a bill for divorce, or other matter, otherwise than by her next friend, except in cases where her husband has joined with her in the bill."   The obvious design was, to have some one responsible for the costs, and although under the law as it is above laid down, no decree for cost, can be rendered against the wife (except in cases where she has a seperate estate.)   We think under this statute, and the general discretion of the court over the subject of costs, we have the right to make a just and equitable distribution of it between the husband and *prochein ami.*    And as the former, by his indiscreet, conduct and hasty declarations, afforded plausible ground for filing the bill, he was rightfully taxed with the cost in the court below.    The decree then, so far as it respects the costs, is affirmed ; but the same as to the divorce which was decreed, is reversed, and the bill must be dismissed.  The *prochein ami* must pay the cost of this court, as he has forced the plaintiff here to rid himself of the decree.

We have no power in the present posture of the case to make any order respecting the custody of the child, nor would we be disposed to exercise it if we had.   We indulge the hope that she may yet be favored with the joint guidance, and protection, of father and mother.

Decree as above stated.