# Suther v. The State.

*Indictment for Seduction.*

1. *Seduction; when evidence corroborative of prosecutrix suffi-
cient.*—Under the statute defining the offense of seduction, and
which provides that a conviction can not be had thereunder
on the "uncorroborated testimony of the woman upon whom
the seduction is charged, (Code of 1896, §5503; Code of 1886,
§ 4015), the evidence corroborative of the testimony of a
prosecutrix is sufficient to authorize a conviction, if it extends
to a material fact and satisfies the jury that the woman is
worthy of credit.

2. *Same; chastity of prosecutrix; burden of proof.*—Under the
statute defining seduction (Code of 1896, § 5503) the chastity
of the prosecutrix at the time of the alleged seduction is an
essential ingredient of the offense, and is to be presumed in
the absence of evidence to the contrary, and the burden of
proving unchastity is upon the defendant, but when there
is introduced evidence tending to prove unchastity of the
woman, reasonable doubt of her chastity is as fatal to a
conviction as is the existence of such doubt in reference to
any other material fact.

3. *Same; same.*—On a trial under an indictment for seduction,
evidence as to the reputation or character of the prosecutrix
as to unchastity prior to the time of the alleged seduction,
is inadmissible; the inquiry in such a case being as to the
actual chastity or unchastity of the woman at the time of
the commission of the alleged offense.

4. *Same; evidence of defendant having given presents to pros-
ecutrix admissible*—On a trial under an indictment for seduc-
tion, where there was evidence that the commission of the
offense was procured under a promise of marriage, the fact
that during the period of the engagement of marriage be-
tween the defendant and prosecutrix, and before the time of
the establishment of the illicit relation, the defendant made
valuable presents to the prosecutrix, is admissible in evi-
dence.

[Suther v. The State.]

5. *Same; admissibility in evidence of the declarations of the de-
    fendant.*—In such a case, the declarations of the defendant
    as made to a witness that the prosecutrix was a nice girl
    and a suitable companion for witness's daughter, and that
    he intended to marry her, are admissible in evidence.

6. *Witnesses; when inconsistent statements can not be proved.*
    When in the examination of a witness, no proper predicate
    for his impeachment has been laid, evidence of declarations
    made by such witness, inconsistent with the testimony given
    on the trial. is inadmissible.

7. *Same; cross examination.*—In the cross examination of a wit-
    ness introduced for the defendant in a criminal case. it is
    permissible for the State to ask such witness if he did not at
    a certain time and place, state to a certain named person that
    he was afraid not to testify for the defendant, lest the de-
    fendant should have him arrested; such statement, if made,
    being proper matter for the consideration of the jury in
    weighing the testimony of the witness.

8. *Seduction; charge to the jury.*—On a trial under an indictment
    for seduction, a charge is properly given as containing cor-
    rect definitions of the means for the accomplishment of the
    offense charged, which instructs the jury that *"Deception* is
    the act of deceiving, the intentional misleading of another
    by a falsehood spoken or acted. *Temptation* is that which
    tempts to evil; an evil enticement or allurement. *Flattery* is
    an effort to influence another by use of false or excessive
    praise; insincere, complimentary language or conduct. *Arts*
    is the skillful and systematic arrangement or adaptation of
    means for the attainment of some desired end."

9. *Same; same.*—In such a case. a charge is properly given as
    containing a correct definition of the word seduced as used
    in such, which instructs the jury that "the word seduce, as
    found in the statute, imports not only illicit sexual inter-
    course, but also a surrender of the woman's chastity. By
    this, it is not. however. intended that the woman who may
    have at some time fallen can not be the subject of seduction.
    Although she may have fallen at some time, yet, if she has re-
    formed, and at the time she yielded to the man she is chaste,
    then she is in the protection of the statute."

10. *Same; chastity of prosecutrix; charge to the jury.*—On a trial
    under an indictment for seduction, the chastity of the prose-
    cutrix must be determined from all the evidence in the case,
    and charges which predicate the acquittal of the defendant
    upon the jury finding that prosecutrix was unchaste after con-
    sidering only the testimony tending to impeach her chastity,
    are properly refused.

[Suther v. The State.]

11. *Same; charge to the jury.*—On a charge under an indictmeent
    for seduction, a charge requested by the defendant which
    authorizes an acquittal unless the jury believe beyond all
    reasonable doubt that the seduction was accomplished by
    means of promise of marriage, is properly refused, since if
    the seduction was induced by means of temptations, decep-
    tions, arts or flattery, the offense is as complete as if ac-
    complished by a promise of marriage.

12. *Same; same.*—On a trial under an indictment for seduc-
    tion, the State is not bound to prove the chastity of the
    prosecutrix to a moral certainty as an affirmative proposi-
    tion, even where there is evidence to the contrary; and a
    charge is erroneous which instructs the jury that the bur-
    den of proof is on the State to establish beyond a reasona-
    ble doubt that the prosecutrix was chaste at the time of the
    seduction, and that unless this is done, the defendant must
    be acquitted.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The appellant, James Suther, was indicted, tried and
convicted for the seduction of Jeannette Frail.

The evidence for the State tended to show that Jean-
nette Frail was a young woman about seventeen years
of age at the time of the alleged seduction, which was
in January, 1897, living with her parents; that Suther
introduced himself to her in May, 1896, on the street,
and began to pay her attention from that time; that
within three or four weeks afterwards he became en-
gaged to marry her, and asked the consent of her par-
ents in June, 1896, and continued to go to see her from
one to three times a week until March 9th, 1897, when
the engagement was broken; that before she met Suther
she had received the attentions of other young men, but
Suther was the only one who paid her any attention
during the period named. During the fall and winter
of 1896, Suther gave her presents consisting of rings,
bracelets, dresses, hats, gloves and some other things,
and told several persons, including his sister and
brother-in-law, that he intended marrying her.

The prosecutrix, Jeannette Frail, as a witness for the
State, testified that the defendant had sexual inter-
course with her twice; the first time being in January,
1897; that at such time she was engaged to be married
to the defendant; that a short time after that he again

had intercourse with her; and that in March 1897, he quit coming to see her, and broke off their engagement; he asked her to return the ring he had given her. The mother of said Jeannette Frail also testified, as a witness for the State, to facts tending to corroborate her testimony, as to the defendant having had sexual intercourse with said Jeannette.

The evidence for the defendant tended to show unchastity on the part of Jeannette Frail. There were some witnesses introduced by the defendant who testified that they had had sexual intercourse with her. Mr. and Mrs. T. S. Kennedy, who were her neighbors, testified that they saw one Tom Poe go to the house of Jeannette one evening when her mother and father were away from home, and that he staid there all night. The said Poe, as a witness, testified that he had sexual intercourse with said Jeannette.

Upon different witnesses who were introduced by the State testifying to the defendant having given to Jeannette Frail presents consisting of rings, bracelets, dresses, hats, gloves and other things, the defendant separately objected to each of the questions evoking such testimony, and also separately moved the court to exclude such testimony from the jury. The court overruled each of the several objections and each of the several motions; and to each of these rulings the defendant separately excepted.

Upon the cross-examination of one of the witnesses for the State, the defendant asked him the following questions: "Did not a certain man in Pratt City, before that time [when defendant told him he was likely to marry Jeannette Frail] tell you that he had had sexual intercourse with Jeannette Frail?" "Had you not heard previous to that time that one or two men had had sexual intercourse with Jeannette Frail?" "Have you not heard that a friend of yours had sexual intercourse with Jeannette Frail previous to January, 1897?" The State objected to each of these questions, as they were asked, the court sustained the objections, and the defendant separately excepted to each of such rulings. Upon the examination of T. L. Kennedy, a witness for the defendant, the defendant asked him the following question: "Was there not considerable com-

plaint in the neighborhood about the unseasonable hours Jeannette Frail kept with young men, and the manner in which she carried on with them?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. Upon the examination of one McClellan, a witness for the defendant, the defendant asked the following questions: "Do you know the general character of Jeannette Frail for chastity, previous to January, 1897?" "State whether or not you heard previous to January, 1897, that Jeannette Frail was not a chaste woman?" The State objected to each of these questions separately, and the defendant separately excepted to the court sustaining each of the objections.

Mrs. Mary McLaughlin, a witness for the State, testified that she was a sister of the defendant; that she knew Jeannette Frail, and during the time the defendant was visiting Jeannette, he was boarding at her house; that she asked the defendant what sort of a girl Jeannette was, and he told her that she was a nice girl, that he intended to marry her, and that she could not let her daughter go with a nicer girl. The defendant moved the court to exclude the declarations of the defendant, as testified to by the said witness, and duly excepted to the court overruling his motion.

Mrs. Mary Anderson, a witness for the defendant, testified that she knew Jeannette Frail and the defendant; that Jeannette told her that she was going to wait until just before defendant married, and then she was going to sue him. The defendant asked the said witness, Mrs. Anderson, the following questions: "Did Miss Frail ever say anything to you about having had criminal connection with Suther, the defendant?" "Did Miss Frail ever, at any time before the suit and after the break-up, say anything to you about the break-up between her and Suther?" "Did Miss Frail tell you last summer, at your house, that her mother made her break off with Suther?" The State objected to each of these questions separately; the court sustained each objection, and the defendant separately excepted to each of such rulings.

After Harry Anderson, a witness for the defendant, had testified that he had had sexual intercourse with

Jeannette Frail, the prosecutrix, the State asked him the following question: "Did you not at Pratt City dummy station, some time two weeks ago, tell Shugart that you were afraid not to testify for Suther, for fear he would have you arrested?" The defendant objected to this question, the court overruled the objection, and the defendant duly excepted. The witness answered, that he did not. There was evidence introduced by the State in rebuttal tending to show admissions by the witnesses Poe and Harry Anderson, that they had each received money from the defendant to testify, or on account of their testimony, in this case.

Upon the introduction of all the evidence, the court, in its oral charge, instructed the jury, among other things, as follows: "The seduction must be accomplished by means of temptation, deception, arts, flattery, or a promise of marriage. Deception is the act of deceiving, the intentional misleading of another by a falsehood spoken or acted. Temptation is that which tempts to evil; an evil enticement or allurement. Flatery is an effort to influence another by use of false or excessive praise; insincere, complimentary language or conduct. Arts is the skillful and systematic arrangement or adaptation of means for the attainment of some desired end." The defendant duly excepted to this portion of the court general charge; and also excepted to the following portion of said charge: "The word seduce, as found in the statute, imports not only illicit sexual intercourse, but also a surrender of the woman's chastity. By this, it is not, however, intended that the woman who may have at some time fallen can not be the subject of seduction. Although she may have fallen at some time, yet, if she has reformed, and at the time she yielded to the man, she is chaste, then she is in the protection of the statute."

The defendant requested the court to give to the jury, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (8.) "If after considering all the evidence you have a reasonable doubt as to the truth of the testimony of the witnesses who testify that they have had sexual intercourse with Jeannette Frail before the alleged seduction, you must find the defendant not guilty."

(9.) "Unless, upon a consideration of all the testimony, the jury believe beyond a reasonable doubt, that the testimony of the witnesses as to sexual intercourse with Jeannette Frail, before the time of the alleged seduction is untrue, you must find the defendant not guilty." (10.) "Even though the jury may believe the defendant had sexual intercourse with Jeannette Frail, yet, unless they further believe to a moral certainty such intercourse was procured by means of a promise of marriage, they must find the defendant not guilty." (11.) "If the jury entertain a reasonable doubt as to whether or not the woman submitted to sexual intercourse by reason of a promise of marriage, or through her own passions, they must find the defendant not guilty." (12.) "Even though the jury may believe there was sexual intercourse between the defendant and Jeannette Frail, this is not sufficient; they must further believe beyond a reasonable doubt, that the woman was chaste and surrendered her chastity as a direct result of a promise of marriage." (13.) "The corroborative evidence must be of some material matter, tending to directly connect the defendant with the commission of the offense charged; and I charge you that evidence corroborating the woman's testimony as to the promise of marriage is not sufficient in this case." (14.) "The mere fact that there was a promise of marriage is not sufficient; the evidence must go further, and show to a moral certainty that there was criminal connection, and also show beyond a reasonable doubt, that such connection was affected by means of such promise, and not from the unrestrained passions of the woman." (15.) "Mere acquaintance and mere opportunity for sexual intercourse do not furnish corroborating evidence of seduction; the evidence must go further, and must, when taken together with the evidence of the woman, exclude every other reasonable hypothesis." (16.) "The fact of sexual intercourse must first be established to a moral certainty, and the uncorroborated evidence of the woman is not sufficient; and unless there is corroborative evidence in connection with her own to satisfy your minds beyond a reasonable doubt, you must acquit the defendant." (17.) "It is not the duty of the defendant to show that Jeannette Frail was an unchaste woman at

the time of the alleged seduction; but, on the contrary,
if there is any evidence tending to show her unchaste-
ness, the burden of proof is on the State to show to a
moral certainty her chastity, and unless this is done,
you must acquit the defendant." (18.) "It is not in-
cumbent on the defendant to show that Jeannette Frail
was an unchaste woman at the time of the alleged seduc-
tion; but, on the contrary, it devolves upon the State to
prove her chastity beyond a reasonable doubt, and un-
less this is done, you must find the defendant not guil-
ty." (19.) "The burden of proof in this case is on the
State to establish in your minds beyond a reasonable
doubt that Jeannette Frail was chaste at the time of
the alleged seduction, and unless this is done, you must
find the defendant not guilty." (20.) "If you believe
the evidence, you must find the defendant not guilty."

DANIEL A. GREENE, for appellant.—The court com-
mitted error in excluding the evidence offered by the
defendant tending to show acts of unchastity on the part
of the prosecutrix, and her general reputation and char-
acter for chastity prior to the time of the alleged seduc-
tion.—*Goodwin v. State,* 102 Ala. 87; *Jackson v. State,*
78 Ala. 471; *Thompson v. State,* 106 Ala. 67; *Ford v.
State,* 71 Ala. 385; *Gandy v. State,* 86 Ala. 20; *Alsa-
brooks v. State.,* 52 Ala. 24.

The burden of proof as to the chastity of the prosecu-
trix, after the introduction of evidence tending to show
the contrary, was upon the State .—*Wilson v. State,* 73
Ala. 527; *Henson v. State,* 112 Ala. 41; 5 Amer. & Eng.
Encyc. of Law, (2d ed.), pp. 30, 33, 40; 19 Amer. & Eng.
Encyc. of Law, 61.

There was not sufficient corroborative evidence to
authorize a conviction.—*Wilson v. State,* 73 Ala. 527;
*Cunningham v. State,* 73 Ala. 51; *Cooper v. State,* 90
Ala. 641; *Ford v. State,* 71 Ala. 385; *Gandy v. State,*
86 Ala. 20; *Alsabrooks v. State,* 52 Ala. 24; *Andre v.
Iowa,* 5 Iowa, 389; *Boak v. Iowa,* 5 Iowa 430.

The court erred in refusing to give the charges re-
quested by the defendant.—*Perry v. State,* 78 Ala. 22;
*Harris v. State,* 96 Ala. 24; *Garrett v. Garrett,* 27 Ala.
687; *Bibb v. Mitchell,* 58 Ala. 657; *Lehman v. Warren,*
53 Ala. 535; *Williams v. Barksdale,* 58 Ala. 288; *Hen-*

[Suther v. The State.]

*derson v. State,* 49 Ala. 20; *Adams v. State,* 42 Amer. St. Rep. 790.

WILLIAM C. FITTS, Attorney-General, and HUGH MORROW, for the State.—The evidence as to the acts of unchastity and the character or reputation of the prosecutrix prior to the commission of the offense charged, were properly excluded.—21 Amer. & Eng. Encyc. of Law, 1047; *Hussey v. State,* 86 Ala. 35. This court has been long since committed to the doctrine that proof of general reputation for unchastity is not the legal way to prove unchastity in cases of seduction. *Hussey v. State,* 86 Ala. 35; *Kenyon v. People,* 26 N. Y. 203; Bishop on Stat. Crimes, (2d ed.) § 639; *Wilson v. State,* 73 Ala. 527; 21 Amer. & Eng. Encyc. of Law, 1048.

The charges requested by the defendant were properly refused—*Hussey v State,* 86 Ala. 35; *State v. Brinkaus,* 34 Minn. 285; *Perry v. State,* 78 Ala. 22; *Bracken v. State,* 111 Ala. 68.

BRICKELL, C. J.—The defendant was indicted and convicted under section 5503 of the Code of 1896 (section 4015 of the Code of 1886), defining and punishing the offense of seduction. That section is as follows: "Any man, who, by means of temptation, deception, arts, flattery, or a promise of marriage, seduces any unmarried woman in this State, must, on conviction, be imprisoned in the penitentiary for not less than one, nor more than ten years; but no indictment or conviction shall be had under this section on the uncorroborated testimony of the woman upon whom the seduction is charged; and no conviction shall be had if, on the trial, it is proved that such woman was, at the time of the alleged offense, unchaste." The original statute was enacted March 15, 1875.—Pamph. Acts, p. 239. It was amended December 7, 1876.—Pamph. Acts, p. 134. The act as amended was carried into the Code of 1876 as section 4188. That section was amended February 25, 1881, (Pamph. Acts, p. 48); and as thus amended was carried into the Code of 1886 as section 4015, substantially as above set out. The statute has been the subject of consideration by this

court in a number of cases arising under it. See note
to section 5503 of the Code of 1896. The earliest case,
that of *Cunningham v. State*, 73 Ala. 51, called for a
construction of that part of the statute which provides
that no indictment or conviction shall be had on the un-
corroborated testimony of the woman upon whom the
seduction is charged. After a thorough consideration
of the question the conclusion was reached and the
rule announced that the corroboratory evidence is suf-
ficient if it extends to a material fact, and satisfies the
jury that the woman is worthy of credit. This rule
was reaffirmed in the case of *Wilson v. State*, 73 Ala.
527; and has been adhered to in all subsequent cases
in which the question arose.—*Munkers v. State*, 87 Ala.
94; *Cooper v. State*, 90 Ala. 641. That there is, in this
case, evidence tending to corroborate the woman can-
not be seriously questioned.

The statute provides that "no conviction shall be had
if, on the trial, it is proved that such woman was, at
the time of the alleged offense, unchaste." In *Wilson
v. State*, 73 Ala. 527, it was said: "The statute is for
the protection of the chastity of unmarried women, and
the existence of the virtue at the time of the inter-
course is a necessary ingredient of the offense; for, as
has been often said, the woman who has lost her chas-
tity, the prostitute, may be the victim of rape, but is
not the subject of seduction. By this is not, however,
intended that the woman who may have at some time
fallen, cannot be the subject of seduction. That may
be true, and there may be reformation; and, at the time
she yields to the man's embraces, she may have the
virtue of chastity, not in the high degree of the woman
who has not strayed, but yet, within the meaning of
the statute, entitling her to its protection." And
again: "It is only in the event that there is upon the
trial evidence of a want of chastity, that a conviction
is prohibited; there is no prohibition of a conviction
in the absence of evidence tending to show chastity.
The prohibition of conviction is, in the event the woman
is unchaste at the time of the criminal connection. In
this respect the statute differs from the statutes of some
of the States, which refer only to reputation, requiring
that she must be of previous good repute for chastity.

\* \* \* \* It is the virtue of the woman at the time of the seduction, that is the material fact, and it is a fact, the existence of which the jury must determine from the evidence of her prior conduct. The want of chastity is as essentially directed to the essence of guilt, as is the absence of the illicit intercourse, or the absence of the inducements to such intercourse specified in the statute. If there be not contrary evidence, chastity will be presumed in obedience to the statute. But when there is contrary evidence, the final question is, whether the guilt of the accused is fully proved; and, then, a reasonable doubt of the chastity of the woman is as fatal to a conviction, as is the existence of such doubt in reference to any other material fact." The inquiry is not as to character or reputation for chastity; it is as to actual chastity at the time of the alleged seduction.—*Hussey v. State,* 86 Ala. 34; *Munkers v. State,* 87 Ala. 94; *Bracken v. State,* 111 Ala. 68. But in rebuttal of evidence tending to impeach her chastity, the woman may adduce evidence of her general character in that respect.—*Smith v. State,* 107 Ala. 139. The rulings of the criminal court upon the admissibility of testimony, and the instructions to the jury relating to the question of chastity are in harmony with the principles announced in these cases, and were free from error.

There was no error in the admission of evidence, that the defendant during the period of the engagement of marriage, and before the time of the alleged sexual intercourse, made valuable presents to the woman. Nor was there any force in the objection to the evidence of Mrs. McLaughlin, that defendant told her that he intended to marry Miss Frail, and that she was a nice girl.

No predicate having been laid for the admission of evidence of declarations made by Miss Frail out of court, inconsistent with her testimony on the trial, the court properly disallowed the question propounded to the witness, Mrs. Anderson, seeking to prove such declarations.

The court committed no error in permitting the State to ask the witness, Harry Anderson, on cross-examination, whether he had, at a designated time and place,

said to a named person that he was afraid not to testify for the defendant, lest the defendant should have him arrested. If the witness had made such statement, it was proper matter for the consideration of the jury in weighing his testimony.

The portions of the oral charge excepted to by the defendant are not open to objection. The definitions given of the words employed in the statute, *temptation, deception, arts, flattery,* are in harmony with the meaning of these words as defined by standard lexicographers; and the definition of the word *seduce,* is in accord with what was said in the case of *Wilson v. State, supra.*

We have carefully examined each of the written charges, numbered from one to twenty, both inclusive, requested by the defendant and refused by the court. Without undertaking to discuss them seriatim it may be said that each was properly refused. They are argumentative, or misleading, or invasive of the province of the jury, or otherwise erroneous as propositions of law, when considered in the light of the evidence. It is true that a reasonable doubt of the chastity of the woman at the time of the alleged seduction entitles the defendant to an acquittal.—*Wilson v. State, supra; Carney v. State,* 79 Ala. 14; *Munkers v. State, supra.* But the question must be determined from all the evidence, and not alone from that of witnesses whose testimony tends to impeach her chastity. Charges numbered 8 and 9, besides being otherwise faulty, are rested upon the testimony alone of witnesses for the defendant, ignoring or obscuring the testimony of other witnesses upon that point. Charges numbered 10, 11, 12, and 14 were each properly refused, because they are limited to a promise of marriage as the means of seduction.—*Anderson v. State,* 104 Ala. 83; *Bracken v. State,* 111 Ala. 68. Charges numbered 13, 15 and 16, with respect to corroborating evidence, are not in accord with the rule established by former decisions, and were properly refused.—*Cunningham v. State, supra,* and other cases hereinbefore cited. Charges numbered 17, 18 and 19 leave out of view the presumption of chastity, and place upon the State the burden of proving, as an affirmative proposition, that the woman was chaste at

the time of the alleged seduction. We have already shown that such is not the law. Charge numbered 20, being the general charge, was properly refused.
    Affirmed.


