[Weaver v. The State.]

# Weaver. v. The State.

## Indictment for Seduction.

1. *Seduction; evidence, when admissible.*—On a trial under an indictment for seduction where there is evidence that the commission of the offense was procured by means of a promise of marriage, it is competent for the prosecutrix to testify that the defendant told her that he loved her.

2. *Same; immaterial testimony.*—In such a case it was not material whether the child of the prosecutrix was born and the promise made in the county where the prosecution was begun.

3. *Same; when evidence admissible as bearing on promise of marriage.*—In such a case, the brother of the prosecutrix may testify that he heard the defendant tell the prosecutrix that he loved her, as such testimony tends to corroborate her on this point and was a circumstance which with others might authorize the jury to believe that he was leading her to believe that he was going to marry her.

4. *Same; evidence of flight.*—In such a case, it may be shown that the defendant was not in the community where the prosecutrix lived, after the offense was committed, until brought back to answer the indictment, as tending to show that he realized his danger after learning of her condition.

5. *Same; admissibility of letters from defendant to prosecutrix.*—In such a case, letters written by the defendant to the prosecutrix after the commission of the offense, and received by her through the usual channels, are admissible, as tending to show the relations that had existed between them.

6. *Same; argument of counsel.*—In such a case, remarks of the solicitor to the jury on the word "beast" used in a letter received by the prosecutrix from defendant, in the place of "best," that the defendant characterized himself by the use of the word "beast," are mere expressions of opinion, and unobjectionable.

7. *Same; charge to jury.*—In such a case, where there is evidence that the prosecutrix yielded to the defendant as the result of a promise of marriage, a charge which instructs the jury that "if the evidence satisfies you beyond a reasonable doubt that Mollie Jerkins surrendered her virtue and had sexual intercourse with defendant as a result of a promise of marriage made to her by defendant, but that said promise was made by

[Weaver v. The State.]

defendant and said Mollie Jerkins surrendered her virtue in 1898, then your verdict must be for the defendant," is properly refused as she may have surrendered her virtue in 1898 and yet if she yielded to him in 1901 she would be entitled to the protection of the statute.

8. *Same; same; chastity of prosecutrix.*—In such a case a charge is erroneous which instructs the jury to find the defendant not guilty if he had intercourse with the prosecutrix prior to the time mentioned by her, as she may have been mistaken in the exact date and if she had previously fallen she may have reformed and if she then yielded to him under promise of marriage she would be entitled to the protection of the statute.

9. *Same; same; same.*—In such a case, a charge is erroneous which instructs the jury that they could infer the unchastity of the prosecutrix because the State did not produce testimony as to her character.

10. *Same; same; corroboration of prosecutrix.*—In such a case, where there was evidence that defendant was overheard to tell the prosecutrix that he loved her, that he visited her frequently for several years, that after the commission of the offence he left the community, that he wrote letters to her containing acknowledgments of his relations with her and of his promise of marriage, the jury might have found that the prosecutrix was corroborated within the requirements of the statute, and a charge instructing the jury to acquit the defendant for want of such corroboration, is properly refused.

11. *Same; same.*—In such a case a charge is properly refused which instructs the jury to acquit the defendant unless the prosecutrix yielded on account of a promise of marriage where the jury might have found that she yielded as the result of "arts" or "flattery."

12. *Same; same; corroboration of prosecutrix.*—In such a case it is not necessary for the prosecutrix to be corroborated by other testimony as to the promise of marriage and it is sufficient if she is corroborated as to either of the material facts so as to satisfy the jury that she was worthy of credit.

13. *Same; same.*—Charges which are contradictory, confusing or involved are properly refused.

14. *Same; same; willingness of prosecutrix.*—In such a case, a charge is properly refused which instructs the jury to find the defendant not guilty if the prosecutrix was willing to commit the offence, since such willingness may have been the result of his arts or flattery.

16. *Motion in arrest of judgment; when properly overruled.*—Irreg·
    this court will not pass upon the correctness of a charge given
    at the instance of the solicitor—that the written charges given
    for the defendant are not in conflict with the oral charge.

15. *Motion in arrest of judgment; when properly overruled.*—Irreg-
    ularities in the formation of the jury are waived if not ob-
    jected to before the trial is entered upon, and a motion in ar-
    rest of judgment because of such irregularities, is properly
    overruled.

APPEAL from Conecuh Circuit Court.

Tried before the Hon. J. C. RICHARDSON.

The appellant, Colonel Weaver, was indicted, tried
and convicted for the seduction of Mollie Jerkins, "by
means of temptations, arts, flattery or a promise of mar-
riage," and his punishment fixed at six years imprison-
ment in the penitentiary.

The evidence for the State tended to show that Mollie
Jerkins, a young woman, was at the time of the trial the
mother of a child, born in November, 1902, of which the
defendant was the father; that she and defendant be-
came acquainted with each other in 1899, and from that
time until August, 1902, were together frequently; that
in November, 1901, she made him a promise of marriage
and soon afterwards had sexual intercourse with him
for the first time, and continued to do so until August,
1902, when she informed defendant that she was in fam-
ily way and requested him to keep his promise to marry
her, which he declined to do and left the community and
did not return until he was arrested and brought back
under the present indictment.

The evidence for the defendant tended to show that
the defendant was sick and confined to his father's house
with measles from February 1, 1902, until March 15,
1902, and that he did not go to see Mollie Jerkins dur-
ing that time; and the defendant testified in substance
that in 1898 he and the prosecutrix became engaged to
marry, but this engagement was broken in September of
that year, and nothing afterwards was ever said between
them on that subject; that afterwards and until August,
1902, he frequently had intercourse with her, except dur-
ing the months of February and March, 1902, when he

was sick with measles; that he was not the father of the child, and that he left the community in August, 1902, when informed that she was in a family way; that he wrote the letters offered in evidence by the State, to the prosecutrix.

On the examination of Mollie Jerkins, the prosecutrix, she was asked by the solicitor, "Was it in Conecuh county that the baby was born, and the promise to marry made, and sexual intercourse had?" to which the defendant objected, the court overruled the objection and defendant excepted. The witness answered, "Yes, it all happened in Conecuh county."

John Jerkins, a brother of the prosecutrix, testifying for the State, stated that he heard defendant "tell her one night in 1901 he loved her," to which the defendant objected, the court overruled the objection and defendant excepted.

J. P. Jerkins, father of the prosecutrix, testifying for the State, was asked by the solicitor whether he had seen the defendant in that community after August, 1902, to which the defendant objected, the court overruled the objection and defendant excepted. The witness answered no, not until he was brought back.

On the further examination of the prosecutrix she testified that after the defendant left the community she received letters from him; that she knew his handwriting, and that the letters were written by him, and that they were received, some by mail and some from members of defendant's family. The State offered the letters in evidence, the defendant objected, the court overruled the objection and defendant excepted.

The letters were lengthy and contained many references to the relations between them and allusions to his promise to marry her.

One of the letters admitted was signed "Your beast friend." In his argument to the jury the solicitor stated that the defendant characterized the sort of a friend he was to the prosecutrix when he signed the letter in that manner. The defendant objected to the argument and moved to exclude the same from the jury, the court

overruled the objection and motion and defendant excepted.

Upon the introduction of all the evidence the defendant requested the following charges, which the court refused and he excepted: "The court charges the jury that if the evidence satisfies you beyond a reasonable doubt that Mollie Jerkins surrendered her virtue and had sexual intercourse with defendant as a result of a promise of marriage made to her by defendant, but that said promise was made by defendant and said Mollie Jerkins surrendered her virtue in 1898, then your verdict must be for defendant." "The court charges the jury that if you believe from the evidence that Mollie Jerkins had illicit intercourse with the defendant in this case prior to the first Thursday after Christmas, 1901, and at a time prior to date she swore she first had sexual connection with defendant, then said Mollie Jerkins was not on said first Thursday after Christmas a chaste woman, and your verdict must be for defendant." (f). "The court charges the jury that when the defendant offered evidence tending to prove that Mollie Jerkins was an unchaste woman at the time of the alleged offence, it was permissible for the State to offer evidence as to the general character of Mollie Jenkins for chastity, and the failure of the State to offer such evidence is a circumstance you can look to in determining whether or not Mollie Jerkins was a chaste woman at the time of the alleged seduction." (h). "The court charges the jury that the evidence in this case does not show such a corroboration of the testimony of Mollie Jerkins as will authorize a verdict against the defendant." "The court charges the jury that though you may believe from the evidence that the defendant and Mollie Jerkins were engaged to be married and they had sexual intercourse, that this is not sufficient to convict the defendant unless you believe from the evidence beyond all reasonable doubt that Mollie Jerkins yielded to the sexual intercourse on account of the promise of marriage, and this fact of the promise of marriage is corroborated by another witness or witnesses in the case, and was the proximate cause of her yielding to the sexual intercourse, then you must find the defendant not guilty. (3d). "If you believe from the evidence in the case that

[Weaver v. The State.]

Mollie Jerkins was as willing, or as much willing, as the defendant to the sexual intercourse, or you have a reasonable doubt on this subject, after looking at all the evidence in the case, or unless the State or all the evidence on this subject, after considering the evidence as a whole, so convince you beyond all reasonable doubt that Mollie Jerkins did not yield to the sexual intercourse to gratify her own passions and desires, then you must find the defendant not guilty." (4th). "If you believe from the evidence in the case that Mollie Jerkins, the prosecutrix, was more or as willing as the defendant to have sexual intercourse, and they did have sexual intercourse under these circumstances, then your verdict must be for the defendant, and you must find him not guilty." (5th). "The presumption of innocence is with the defendant when he enters upon his trial, and follows him all through the trial until his guilt is established as charged in the indictment, and until that is done he, the defendant, need not say anything. Mathematical certainty is not required, because all questions are subject to some degree of doubt, but this does not mean that you can convict the defendant unless you believe from all the evidence in the case he is guilty and acting on grave concerns of your own, you believe he is guilty beyond all reasonable doubt, and if you do not so believe, you must find him not guilty."

The court, at the instance of the solicitor, gave the following written charge to the jury, to which action the defendant excepted: "The court charges the jury that the written charges read to the jury in this case by the counsel for the defendant are not in conflict with the general oral charge of the court, but only a different manner of stating the law in this case.

After the verdict of the jury was returned into court the defendant moved in arrest of judgment because of irregularities in the drawing and summoning of the jurors. The court overruled the motion.

STALLWORTH & BURNETT and JAS. A. STALLWORTH, for appellant.—The woman was not corroborated and the conviction was wrongful. The woman should not

have been permitted to testify that the defendant made love to her. The place of the birth of the child was not material. The court erred in receiving the letters in evidence. They had no bearing on defendant's guilt or innocence.

MASSEY WILSON, Attorney-General, for the State, *contra.*

SIMPSON, J.—The defendant was convicted of the crime of seduction and appeals to this court.

The first exception is to the action of the court, in overruling the objection to the question by the State to the witness (prosecutrix) "Did he make love to you?" Whatever doubt there may have been as to this question, on the subject of opinion evidence, was relieved by the answer, to-wit: "He told me he loved me," which was clearly competent.

(2). While it was immaterial whether the baby was born and the promise made in Conecuh county, or in some other, we cannot see that the defendant could be prejudiced in any way by the answer to that question.

(3). The testimony of the brother of the prosecutrix, as to hearing defendant tell prosecutrix that he loved her, was properly admitted, as it tended to corroborate her testimony on that point, and was a circumstance, which, with others, might authorize the jury to conclude that defendant was leading the girl to believe that he was going to marry her.

(4). The objection to the question, as to whether the witness had seen the defendant in that community after August, 1902, was not well taken, as, while it was not conclusive, yet it was a circumstance, properly placed before the jury, and tending to show that the defendant realized his danger after learning the condition of the prosecutrix.

(5). The objection to the introduction of the letters was properly overruled. The prosecutrix had testified that she knew defendant's handwriting; that she received them through usual channels, and knew them to be from defendant. As to their matter, although writ-

ten after the act of seduction, they tended to show the relations that had existed between them, and contained acknowledgments on his part that he had done wrong, and evident allusions to his previous promises to marry her.

(6). The exception to the remarks of the solicitor on the word "beast" (used in the letter in place of "best") was properly overruled, as the remarks were merely expressions of opinion as to the enormity of the defendant's offence.

(7). The first charge requested by the defendant was properly refused. Although she may have surrendered her virtue in 1898, yet she might have yielded to him in 1901, only on promise of marriage, and been entitled to the protection of the statute.—*Suther v. State,* 118 Ala. 88.

(8). The charge requested by defendant, to the effect that if prosecutrix had intercourse with defendant prior to first Thursday after Christmas, 1901, then she was not, on that day a chaste woman, was proprely refused, because, 1st, she may have been mistaken in the exact date; 2d, even though she had previously fallen, she may have reformed, and, if she yielded to him then only under promise of marriage, she may have, at that time, had the virtue of chastity   *   *   *   within the meaning of the statute, entitling her to its protection." *Suther v. State,* 118 Ala. 88.

(9). The charge marked (f) was properly refused. It would not have been proper for the court to have charged the jury that they could infer the unchastity of the prosecutrix, because the State did not produce testimony as to her character.

(10). The charge marked (h) was properly refused. There was evidence from which the jury might have found that the prosecutrix was corroborated within the requirements of the statute.

(11). While it is true that the mere fact that the parties were engaged to be married and had sexual intercourse is not sufficient to establish the fact that prosecutrix yielded on account of the promise to marry, yet the charge requested on this subject was defective; 1st,

in the omission of the word "and" between the names of defendant and Mollie Jerkins; and, 2d, in that it mentioned the promise of marriage only, as the moving cause, and required the jury to acquit, though they might have found that she yielded as the result of "arts" or "flattery." This charge was also faulty in that it required the jury to acquit, unless the prosecutrix was corroborated, by other testimony as to the promise to marry, whereas this is only one of the material facts, and corroberation as to either of the material facts, so as to satisfy the jury that prosecutrix was worthy· of credit, would be sufficient.—*Wilson v. State,* 73 Ala. 527; *Munkers v. State,* 87 Ala. 94; *Suther v. State,* 118 Ala. 88.

(12). The charge numbered 3, (by reason of mistakes in transcribing or otherwise) is so contradictory and involved that it is not possible to pass on it.

(13). Charge numbered 4 was properly refused because, although prosecutrix may have been willing to. commit the offense, yet she still may have had sufficient control to have enabled her to resist her own desires as well as the importunities of defendant, until she had the assurance that he was going to marry her, and her willingness may have been the result of his arts of flattery.

(14). Charge number 5 is confusing and unintelligible, (possibly owing to the incorrect transcription).

(15). As the oral charge, given by the court, is not set out, it is impossible for this court to pass upon the correctness of the charge given, at the request of the solicitor.

(16). The motion in arrest of judgment was properly overruled, as any irregularities in the formation of the jury were waived.—*State v. Williams,* 3 Stew. 454; *Thomas v. State,* 94 Ala. 75; *Howard v. State,* 108 Ala. 571.

The judgment of the court is affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.