## THE STATE v. CROWLEY.

1. The wife of M, having gone to live in the family of C, the former remarked to the latter that his wife had ruined him, and would ruin C, to which C replied, she had to live somewhere, and he would not turn her away. Held, that this admonition, had no tendency to establish, that there was an illicit connection between C and the wife of M.

2. The suspicion, or jealousy of the wife, of one indicted for adultery, cannot be adduced as evidence against him.

3. Acts occurring eighteen months after the finding of an indictment for adultery, and not connected with other acts, occurring within the time laid in the indictment, cannot be given in evidence, though tending to prove an illicit connection.

4. The party with whom the adultery is charged to have been committed, is a competent witness for the other party. The degree of credit to be given to the testimony, is a question for the jury.

On points referred from the Circuit Court of Lawrence, by the Hon. G. W. Lane.

THE defendant was indicted as a married man, for living in adultery from the first day of January, 1844, to the first day of September of the same year, with Jane McMichael, a married woman. A verdict assessing a fine of $100 was rendered against the defendant, and judgment was rendered accordingly. The points reserved as novel and difficult may be thus stated: 1. The husband of Mrs. McMichael was examined as a witness for the State, and testified that in August, 1843, his wife went to live in defendant's family, upon which occasion he remarked to the defendant that she ruined him (witness,) and would ruin defendant; to which the latter replied, she had to live some where, and he would not turn her away. Witness knew of no other acts tending to show illicit intercourse, and the testimony was admitted, though the defendant moved its exclusion. 2. Mrs. McMichael was living in the defendant's house at the time of the trial, and her husband was asked upon his examination, for the purpose of proving the charge in the indictment, if he knew the state of feeling between his own and the defend-

ant's wife, and allowed to answer the question in despite of an objection by the defendant.  3. Another witness, to whose testimony the defendant objected, testified to acts tending to show illicit intercourse between the defendant and Mrs. Mc-Michael, eighteen months after the finding of the indictment; and this, although these acts were not connected with other acts occurring within the time laid in the indictment.  4. On the objection of the solicitor, Mrs. McMichael, who was introduced as a witness for the defendant, was excluded; although she was sworn, and said she was willing to testify to his innocence of the charge alledged in the indictment.

ATTORNEY GENERAL, for the State.

T. M. PETERS, with whom was L. P. WALKER, for the defendant in error, cited Arch. Cr. Plead. 27; Clay's Dig. 431, § 3; 469, § 1; 1 Stew. & P. Rep. 208; 1 Ala. Rep. 442; 6 Id. 390; 4 Port. Rep. 321; 8 Id. 511; 1 Greenl. Ev. § 11, 12, 13, 40, 41, 44, 51, 52, 53, 54, 379; 2 Id. § 47; 14 Pick. Rep. 518; 22 Id. 397; 10 Conn. Rep. 372; 2 Yeates's Rep. 466; 1 Camp. Rep. 473; 1 T. Rep. 296; 1 Hagg. R. 376; 2 Id. 318.

COLLIER, C. J.—The premonition of the husband of Mrs. McMichael, and the response of the defendant to him, upon her going to live in the family of the latter, does not in itself tend to establish the charge of adultery; and we cannot very well perceive how it could be connected with other evidence, so as to assist in proving the fact.  It cannot be inferred from the witness's assertion, that his wife had ruined him and would ruin the defendant, and the answer of the latter that she must live some where, and he would not drive her from his house, that the defendant was guilty of the offence charged.  Merely looking at these facts, and we can see nothing from which a criminal intent can be deduced—his purpose in receiving Mrs. McMichael into his house, may have been as his language would import, the dictate of benevolence.  The evidence then did not tend to make out the defendant's guilt—it was irrelevant, calculated to divert the inquiries of the jury, to excite their prejudice and mislead

them, and should therefore have been excluded. 1 Greenl. Ev. § 52.

2. In respect to the second point, the defendant's guilt cannot be predicated of the state of feeling existing between his wife and Mrs. McMichael. The latter may have been offensive to the wife, either because of her unamiable disposition, her supposed want of chastity, or other cause having no reference to a suspicion of an illicit intercourse between the defendant and herself. But conceding, as it is altogether possible, that Mrs. Crowley suspected and even asserted that Mrs. McMichael was guilty of an adulterous connection with her husband, her suspicions and assertions would not be evidence against him. This must be so upon the plainest principles of law—if not upon the ground that the wife cannot in such a case give evidence against her husband, certainly the evidence should be excluded because the declarations were not made in court under the sanction of an oath. 2 Greenl. Ev. § 40, *et post*, shows what evidence is admissible to prove adultery.

3. Although adultery is alledged to have been committed *within a limited period of time*, the evidence is not neccessarily to be confined within that period; proof of anterior acts may be adduced in explanation of other acts of the like nature within that period. 2 Greenl. Ev. § 47. So, where criminal intercourse is once shown, it must be *presumed*, if the parties are still living under the same roof, that it *still continues*, notwithstanding those who dwell under the same roof are not prepared to depose to the fact. Id. § 43. The fact may be inferred from circumstances that lead to it by fair inference as a necessary conclusion; what are such circumstances, cannot be laid down universally. They may be infinitely diversified by the situation and character of the parties, by the state of general manners, and by many other incidental circumstances apparently slight in themselves, but which may have an important bearing upon the particular case. The only general rule, says *Lord Stowell*, is, that the circumstances must be such as would lead the *guarded discretion of a reasonable and just man*, to the conclusion that the offence had been committed. *He adds*, "the facts are not of a technical nature; they are facts determinable upon

common grounds of reason ; and courts of justice would wander very much from their proper office of giving protection to the rights of mankind, if they let themselves loose to subtleties, and remote and artificial reasoning upon such subjects. Upon such subjects, the rational and legal interpretation must be the same." 2 Hagg. Cons. Rep. 2, 3. *Again:* It has been said the rule requires that there should be such *proximate circumstances* proved, as by former decisions, or in their own nature and tendency, satisfy the legal conviction of the court that the criminal act has been committed. 1 Hagg. Cons. Rep. 299. Thus we see that adultery need not be shown by positive and direct evidence, but may be inferred from collateral facts or circumstances satisfactorily proved, which are coincident with guilt, and seem naturally to exclude every other hypothesis. Taking these tests as our guides, and it is difficult to perceive how the criminal conduct of the defendant and his supposed paramour within the period laid in the indictment, can be inferred from disconnected acts occurring eighteen months afterwards? Mere isolated acts at such a distance of time, certainly do not establish a premise from which a party may be presumed to be guilty of a high offence against moral and municipal law. They throw no light upon the past, however significant they may be in respect to the future.

4. It is said to be a settled rule of evidence, that a *particeps criminis*, notwithstanding the turpitude of his conduct, is not on that account an incompetent witness, so long as he remains not convicted and sentenced for an infamous crime. But the degree of credit which ought to be given to the testimony of an accomplice, is a matter exclusively within the province of the jury. 1 Greenl. Ev. § 379, 380. It follows from this statement of the law, that Mrs. McMichael was a competent witness, and should have been allowed to give evidence for the defendant. The circuit court ruled the law incorrectly on each of the points referred. Its judgment is consequently reversed, and the cause remanded, that the defendant may be again tried, unless he be otherwise legally discharged.