## MOSSER vs. MOSSER.

[BILL IN EQUITY FOR DIVORCE ON GROUND OF ADULTERY.]

1. *Adultery may be committed with slave.*—Adultery, as the term is used in the statute which makes it a ground of divorce, (Code, § 1961,) may be committed by sexual intercourse with a slave.

2. *Answer on oath.*—The defendant, not being required to answer on oath, cannot, by swearing to his answer, claim any advantage, nor demand fuller proof.

3. *Proof may be circumstantial.*—To authorize a divorce on the ground of adultery, it is not necessary that there should be direct proof of the fact, but it may be inferred from circumstances.

4. *Sufficiency of proof.*—On bill filed by the wife for a divorce, on the ground that her husband, during her absence from home, committed adultery with a negro girl, complainant's only witness, who had acted as housekeeper for

21

defendant during his wife's absence, testified, that he fondled about the girl, and seemed very fond of her company; that she saw the girl go into his room one night at eight o'clock, when the door was shut-to, and there was no light in the room,—heard their voices in conversation, and heard defendant say, 'lie down'; that the girl had not come out of the room at two o'clock, when she (witness) quit watching; that she saw the girl, on several mornings, come out of the room with the defendant; and that, on several occasions, after he had left his room, his bed bore the impression of two persons having slept in it. On the part of the defendant, it was proved, that he was at the time under medical treatment for an eruption on his legs, which were much swollen and inflamed, and which required the application of poultices several times a day; that the girl was the only servant about the house; and that, on one occasion, at the request of complainant's witness, he had severely whipped the girl. *Held*, (Stone, J., *dissenting*,) that the evidence was not sufficient to justify a divorce.

5. *Costs.*—The decree of the chancellor, granting a divorce to the wife, having been reversed on error, and the evidence held insufficient, the costs of the appellate court were imposed on the next friend of the wife, and the costs of the court below on the husband.

Appeal from the Chancery Court of Pike.

Heard before the Hon. Wade Keyes.

This bill was filed by Mrs. Belinda Mosser, seeking a divorce from her husband, Samuel Mosser, on the ground of his alleged adultery with a mulatto girl named Holland, the property of his wife. The defendant moved to dismiss the bill for want of equity, on the ground that adultery cannot be committed with a slave; but the court overruled the demurrer, and on final hearing, on bill, answer, and proof, rendered a decree for the complainant. The testimony in the case, in substance, was as follows:

On the part of the complainant, Mrs. Faitha Wood was the only witness who was examined to prove the alleged adultery; and her testimony, after stating that she lived at the defendant's house, in the capacity of housekeeper, during his wife's absence in Florida, was as follows: "The first thing I noticed of the defendant, in connection with the girl Holland, was, that a little negro girl about the house came and told Holland that her master said she must go there in the store; and this was repeated four mornings in succession, directly after breakfast. I saw her go into the store one morning, and, after remaining there about half-an-hour, come out again; the other mornings I only saw her go out of the

house when the little girl came after her. One morning Holland came into the house, with some white homespun, which she said her master had given to her in the store. The defendant appeared very fond of Holland's company—was frequently in the kitchen with her when she was cooking; she frequented the store, and I could hear two persons talking in the store, which I took to be Holland and the defendant; and at these times I have seen her come out of the store, and when there was no other company there with him, he was with Holland. The defendant said in my presence, that he told his wife to go to Florida, but that he was not going himself—that he was going to stay where he was. At the time of the intimacy between him and Holland, Mrs. Mosser was in Florida. He further said, that he did not intend to sell the house where he lived, but was going to live there another year, and Holland would keep house for him. I have seen her go into his bed-room, and the door was shut-to; and I heard a voice, which I took to be Mosser's, say, 'lie down.' I heard two people talking in the room for about an hour, which I took to be the defendant's voice and Holland's. There was no one else in the room that I know of. This was about two weeks after she went into the store on the morning previously referred to. It was about 8 o'clock at night when she went into the room, and she had not come out at 2 o'clock in the morning ; after which I paid no further attention to them that night. I know nothing of his treatment of the girl, except that he fondled around her more than he did around his wife when she was at home ; and the girl acted impertinently towards me—sometimes she would not speak to me, and when I said anything was so, she would frequently say it was not so. I went to the door of Mosser's room, three mornings, after he went out, and saw the impression where two persons had laid in the bed, and two headings : it was a large feather bed. I then told him, that I was going away from there ; he asked me, what was the matter ; and I replied, that Holland would not mind anything I said to her. He then called her in the house, and asked her what was the matter with her and me ; she replied, nothing ; I told him, that when I said anything was so, she would say it was not so ; and she replied, that she did not say it, and then flirted

out of the room with a great air. I have seen her, on two occasions, come out of his room with him about 8 o'clock in the morning. I never at any time saw them in bed together."

Her answers to the cross-interrogatories are immaterial.

On the part of the defendant, it was proved by several witnesses, that during his wife's absence in Florida he was afflicted with a cutaneous eruption on his legs, and was under medical treatment for it; that his legs were much inflamed and swollen, and required to be dressed with poultices several times a day. One of his witnesses, Mrs. Williams, further testified, that she was at his house frequently during his wife's absence, and while Mrs. Wood was acting as his housekeeper; that the girl Holland was the only servant about the house; that there was no good feeling between Mrs. Wood and Holland; that on one occasion, while she was at the house, she saw the defendant, on the complaint of Mrs. Wood, give Holland a severe whipping; that she heard him tell Mrs. Wood to whip the girl whenever she was disobedient; and that she (witness) sent the girl to defendant for the homespun about which Mrs. Wood testified.

The chancellor's decree, and the overruling of the motion to dismiss the bill for want of equity, are now assigned as error.

WM. P. CHILTON, for the appellant.

L. L. CATO, contra.

STONE, J.—1. Slaves, although property, and free persons of color, are, under our system, regarded as persons for many purposes.—See Code of Alabama, § 2, ¶ 4; § 3305, and others. Crimes may be perpetrated against them by white persons, and the punishment in such cases is little less severe than for offenses of similar grade against white persons.—Code, tit. 1, ch. 2, art. 7, p. 591. They are "reasonable creatures in being," cared-for alike by our laws, and by the commonest dictates of humanity. Section 1961 of the Code declares, that "the court of chancery has power to divorce persons from the bonds of matrimony, in favor of either party, for adultery." The question is presented, can this offense be committed by sexual connection with a slave? Without announcing what

would be our decision, if the question were presented under section 3231 of the Code, we think the bill in this case sufficiently charges adultery, as contemplated by the statute. Words in a statute are presumed to be used in their popular sense, unless a different intention appear.—Thurman v. The State, 18 Ala. 276. There is nothing in this part of the Code, which indicates a different intention ; and we hold, therefore, that the legislature intended to give relief in all cases of " unfaithfulness of a married person to the marriage bid."— Smitherman v. The State, 27 Ala. 23.

2. The appellant was not required by the law to swear to his answer ; and he cannot claim any advantage, or demand fuller proof, by reason of such unauthorized oath.—Moyler v. Moyler, 11 Ala. 621 ; Hughes v. Hughes, 19 Ala. 307.

3. A respectable author, Shelford on Marriage and Divorce, p. 405, has well said, "Adultery, being an act of darkness and of great secrecy, can hardly be proved by any direct means ;" and " that presumptive evidence alone is sufficient proof." The same author says, quoting from Lord Stowell, " It is a fundamental rule of evidence upon this subject, that it is not necessary to prove the direct fact of adultery."—*Ib.* " The only general rule that can be laid down on the subject, is, that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion."—Shelf. on Marriage and Divorce, p. 406. In one case, it was held, that " adultery may be inferred from the general cohabitation of the parties, without proof of particular facts, although the parties have separate beds."—Loveden v. Loveden, 2 Hagg. Cons. R. 4. The court, says Lord Stowell, " will judge of facts as other men of discernment, exercising a sound and sober judgment on circumstances that are duly proved before them."—See, also, Poynter on Marriage and Divorce, 188–9. In our own court, the subject has been under discussion. In Richardson v. Richardson, 4 Porter, 467, Justice Henry Goldthwaite announced the rule, that " the fact is inferred from circumstances, that lead to it by fair inference as a necessary conclusion." The question came again before the court in Collins v. The State, 14 Ala. 608, upon an indictment for adultery ; and the court held the conviction right, though founded on circumstances,

without proof of the direct fact.—See, also, Glaze v. The State, 9 Ala. 283 ; Crowley v. The State, 13 Ala. 172.

4. I think the charge in this case is sufficiently sustained by the testimony, but my brothers think it insufficient to justify the inference that adultery was committed—that the circumstances do not " lead to it by fair inference, as a necessary conclusion;" but that they are all susceptible of a reasonable interpretation, consistent with the innocence of Mr. Mosser.—Richardson v. Richardson, *supra*.

The decree of the chancellor, except as to costs, is reversed, and a decree here rendered, dismissing the complainant's bill. Let the costs in the court below be paid by appellant, and the costs of this court by the next friend of appellee.—Gray v. Gray, 15 Ala. 779.