# Powell *v.* Powell.

*Bill for Divorce.*

80  595
133  383

1.  *Confessions, admissions and consent, as evidence.*—On grounds of public policy, a divorce will not be granted by consent of parties, by collusion between them, nor on their confessions or admissions, express or implied; and a sworn answer only puts in issue the allegations of the bill.

2.  *Collusion implied from pleadings.*—On bill for divorce by the husband, charging adultery by the wife, evidence being taken by both parties, and the litigation conducted with zeal and earnestness on both sides, until about the time when the cause was submitted for decision, when, by agreement of record, the cause was submitted on the testi-

[Powell v. Powell.]

mony of the complainant's witnesses alone, and an agreement as to alimony and solicitor's fees; *held*, that the record suggested collusion between the parties, and stimulated vigilance on the part of the court in the examination of the evidence on which a decree of divorce was founded.

3. *Proof of adultery.*—While a divorce may be granted on the ground of adultery, on circumstantial evidence only, "the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion" that the offense had been committed; and where the evidence points to only two occasions, and the circumstances proved, in each case, are susceptible of an innocent construction, a divorce should not be granted.

APPEAL from Marshall Chancery Court.

Heard before Hon. S. K. McSPADDEN.

This was a bill in equity filed on July 1, 1885, by Lewis R. Powell, against his wife, Sarah Ann Powell, and sought a divorce *a vinculo matrimonii*, on the ground of adultery. The nature of the allegations contained in the bill of complainant and the answer of the respondent, and the character of the testimony are sufficiently shown in the opinion. The chancellor rendered a decree divorcing the parties, the cause being submitted, as shown by the record, upon bill and answer, depositions of specified witnesses, and an agreement of the solicitors of the respective parties. The latter instrument recites "that the said defendant is entitled to be decreed the sum of one hundred and fifty dollars as alimony and the same to be in full satisfaction of all demands and rights of alimony except as to compensation for her solicitor. * * * That the complainant pay to John G. Winston, Jr., the sum of fifty dollars as compensation for services rendered defendant in this suit. And the complainant pay the costs herein to be taxed by the register of this court. Witness our hands this the 17th day November, 1885. Hamill & Lusk, solicitors for complainant; Jno. G. Winston, Jr., solicitor for defendant."

The decree rendered is here assigned as error.

R. C. BRICKELL, for appellant.—(1.) "A divorce suit, while on its face a mere controversy between private parties of record is, as truly viewed, a triangular proceeding *sui generis*, wherein the public or government occupies in effect the position of a third party."—2 Bish. Mar. and Div. § 230 (6th ed.); *Ribet v. Ribet*, 39 Ala. 348; and to it the maxin *consensus tollit errorem* can be but of narrow application. The court, as guardian of the public rights and interests which are involved, will see that a divorce be not granted, the *status* of the citizen be not changed, unless the case be made, and clearly proved, in which the law authorizes a divorce and the change of *status.*—2 Bish. Mar. and Div. § 230. A divorce, the dissolution of a marriage, does not rest in the volition of the parties. (2.) The

[Powell v. Powell.]

bill should have alleged the name of the person with whom the adultery was committed, or that such person was unknown. 2 Bish. Mar. and Div. 601, *et seq.;* *Wood v. Wood,* 2 Paige, 108. (3.) The evidence is insufficient to support the decree. *Richardson v. Richardson,* 4 Port. 467; *Mosser v. Mosser,* 29 Ala. 313; *Jeter v. Jeter,* 36 Ala. 391.

HAMILL & LUSK, *contra.*—(1.) The decree of the chancellor, being based on his finding of facts, will be confirmed unless the record shows that his finding was clearly wrong.—*Sawyers v. Baker,* 77 Ala. 46; *Graham v. Hughes,* 77 Ala. 590; *Smith v. Vaughan,* 78 Ala. 201; *Nooe v. Garner,* 70 Ala. 443. (2.) The conclusion of the chancellor that complainant was entitled to relief could be drawn from circumstantial evidence. 2 Bish. Mar. and Div. § 614. (3.) When the testimony is credited, the facts it establishes will be viewed, not only separately but in conjunction; for they interpret one another. Thus contemplated, they may lead to the inference of guilt when separately they would not.—2 Bish. Mar. and Div. § 615, and authorities cited in note 6.

CLOPTON, J.—The institution of marriage, established by divine, and perpetuated and guarded by human, authority, constitutes the foundation of organized society, protects private and public morality and virtue, and moulds the character of the citizens of the commonwealth. While an agreement to marry is regarded generally a civil contract, by its consummation contractual relations of a special kind are formed, and the *status* of the parties and their duties to each other and to the public, are ascertained and fixed. Extraordinary and exclusive personal relations are created to continue so long as both parties may live, and public interests are involved in the strict and complete observance of the marital vows and covenants. The marriage relation can not be rescinded or annulled by the mere volition of the contracting parties. Its preservation is deemed so essential to the public weal, that it can not be dissolved except by the sovereign power, or by a court of competent jurisdiction for causes prescribed by law on sufficient allegations and satisfactory proof.

The settled policy of the State, founded on these considerations, prohibits a divorce being granted by consent, or collusion, or on the confessions of either or both of the parties, or for want of pleading, or mispleading, or *laches* in making defense. A sworn answer to a bill for divorce is not evidence, and has no other effect than to put in issue its allegations; and a divorce can not be granted on a decree *pro confesso.* The rights and interests of society and the government—of the

community at large—being considered involved, such suits are regarded of a tripartite character. "A divorce suit, while on its face a mere controversy between private parties of record, is, as truly viewed, a triangular proceeding *sui generis*, wherein the public, or government, occupies in effect the position of a third party." 2 Bish. Mar. & Div. § 230 ; *Ribet v. Ribet*, 39 Ala. 348. In the case cited, it is said : "The court is bound to act for the public in such cases, and so has the right to hear proofs not strictly within the allegations of the bill and answer." By the loose practice too prevalent, and the facility with which divorces are sometimes obtained, the courts may be, in a measure, responsible for the extending want of a due appreciation of the sanctity of the marital relation. Whether or not defense be made, the court should feel bound by the highest considerations of duty and public policy to watch the interests of the community, otherwise undefended and unprotected. The appearance or indication of consent express or implied, or of collusion should stimulate the vigilance of the court, and a closer scrutiny of the evidence.

These observations have been suggested by the presentation made by the present record. It presents lamentable scenes of domestic discord, exhibitions of ungovernable temper, and recurring broils between two persons, who had sustained to each other the marital relation for more than thirty-five years, and to whom children were born. The bill and answer abound with criminations and recriminations of cruelty and violence on the part of each, and of infidelity. These disagreements culminated in separation in 1881, but continued thereafter, the parties living near each other on the land of complainant. The bill was filed in May, 1885, by the husband. Several witnesses were examined by each, the complainant and defendant, and the litigation was carried on with zeal and earnestness as between really adversary parties until about the submission of the case for final decree. The cause was submitted on the depositions of the witnesses examined on behalf of complainant and an agreement by the solicitors in respect to alimony. None of the depositions of the several witnesses examined by the defendant were put in evidence or noted by the register.

The sudden termination of real controversy, and the manner of submission, indicate that the decree is the result of some understanding or agreement between the parties. In divorce suits, the parties may control and conduct the cause, as they see proper, in respect to any questions or agreements not affecting the merits nor public interests by having reference to the procurement of the decree. Any agreement will be enforced against the wife, notwithstanding her coverture, made in the course of the proceedings, without being overreached or

[Powell v. Powell.]

imposed on by her husband, and not violative of the public policy. To such agreements the maxim *consensus tollit errorem* applies, but has no application to a *decree* of divorce, obtained by virtue of any consent or agreement direct or indirect, to be divorced. 2. Bish. Mar. & Div. §§ 235-7. Without imputing any blame to the solicitors, who, not infringing any moral or professional duty, merely acted in accordance with the wish and understanding of their clients, whose interests they represented, the omission to introduce on the hearing, and have noted for the consideration of the chancellor, the evidence taken by defendant, the agreement as to the alimony to be allowed, and the tacit withdrawal of objection and resistance to a decree, should, not only not relax, but stimulate vigilance in the examination and scrutiny of the evidence noted, with a view to determine whether the record presents a case in which a divorce ought to be granted.

Cruelty, actual violence, nor disregard of ordinary wifely duties, constitute no ground of divorce in favor of the husband. All such allegations of the bill may be eliminated from the case. The decree is founded on the ground of adultery. Waiving consideration of the sufficiency of the general allegation of the bill, that the defendant "has on divers days and occasions committed adultery with divers persons," without naming any person, or stating any excuse for the omission,— the objection not having been assigned as cause of demurrer— the question arises as to the sufficiency of the evidence to establish this ground for divorce. We recognize the difficulty of proving adultery by direct evidence, it being usually an act of secrecy, preferring darkness to light. Circumstantial evidence, on which reliance must generally rest, may be sufficient. It has been said : "The only general rule that can be laid down on the subject, is, that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion." This is the second bill brought by complainant to obtain a divorce. He admits that in his first suit he did not charge his wife with adultery, and it does not appear, that such act was assigned as a cause of the separation. The men, whom he suspected, were examined by him to prove the fact, and positively deny ever having had sexual intercourse with the defendant. The only two positive circumstances shown by the testimony which may be regarded of a suspicious nature, occured in the day time and at public places. One was under the floor of the mill, where the band wheel was. It was in the morning, and at the mill, where defendant had her corn ground. The witness states, that Shields, the miller, was going in the direction of the wheel, and defendant was standing four or five feet off, saying and doing nothing ;

[Ala. G. S. Railroad Co. v. Arnold.]

that when Shields came out, he said he was mending the band, and witness, after examining, saw that the wheel had not been turned that morning; and Shields denies any improper intimacy. The other occasion was in the public road some distance from home, when the brother of complainant testifies he overtook the defendant walking arm in arm with an unknown man in a very friendly manner, and as closely together as they could get. He accosted her, passed, and saw no more of them. From these circumstances, in connection with suspicions and and impressions, we presume adultery was inferred. The suspicions and impressions of witnesses are both incompetent and insufficient. The circumstances do not lead to the guilt of defendant "by fair inferences as a necessary conclusion," but are susceptible of a reasonable interpretation consistent with her innocence. The evidence is not as clear and satisfactory as is required by the rule established by our former decisions. *Richardson v. Richardson,* 4 Por. 467; *Mosser v. Mosser,* 29 Ala. 313; *Jeter v. Jeter,* 36 Ala. 391. Under this rule, "the inference of adultery could not be drawn from circumstances reasonably reconcilable with the assumption of innocence;" and in such case the inference should not be drawn especially when all disproving and explanatory evidence is withheld from the court.

But as defendant has shown an entire want of regard for her own character, by impliedly assenting to a decree for divorce on the ground of adultery, the decree is reversed, and the bill will be dismissed without prejudice.