**BEARD v. STATE.   (7 Div. 815.)**

(Court of Appeals of Alabama.   Jan. 30, 1923.)

**1. Homicide ⚙166(8), 233—Evidence held admissible to show motive, but insufficient to establish undue intimacy between defendant and deceased's wife.**

In a prosecution for murder where the defense was that death was accidental and the state sought to show a motive of defendant to take deceased's life, evidence that defendant had been seen around deceased's home during deceased's absence was admissible as tending to show relation between defendant and deceased's family; but, in absence of evidence tending to establish undue intimacy between defendant and deceased's wife, it could have no probative force sufficient to establish undue intimacy; the general rule laid down with reference to such accusations being that the circumstance must be such as would lead the guarded discretion of a reasonable and just man to the conclusion.

**2. Criminal law ⚙722(3)—Evidence furnishing no foundation for remarks of state solicitor in argument.**

In a murder prosecution where the defense was accidental death and the state attempted to show motive by showing an intimacy between defendant and deceased's wife, and where the only evidence was that defendant had been seen around deceased's home during his absence, it furnished no foundation for solicitor's remarks in argument, "Over there (pointing to defendant) is a seducer."

---

⚙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Criminal law ⬤➝723(1)—Statement of solicitor in argument that, if jury was mistaken as to conviction, Supreme Court would correct it, error.**

In a murder prosecution, statement of the solicitor that, if the jury convicted defendant and made a mistake, the Supreme Court or the appellate court would correct it, but "if you acquit him, that is the end of it," was illegal argument.

Appeal from Circuit Court, DeKalb County; W. W. Haralson, Judge.

John Beard, indicted for murder in the first degree, was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Isbell & Scott, of Ft. Payne, for appellant.

In order for evidence of the relation of the parties to have been admissible, it must tend to show undue intimacy.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

SAMFORD, J. Defendant and deceased were friends and neighbors, both were married, and both were small farmers, each running a one-horse farm. They were in constant association and frequently exchanged work; the defendant using deceased's mule to make a team, and vice versa. On the night of the homicide, deceased came to defendant's house and induced defendant to go with him some distance away, to return some hinges to an old house, from which they had been formerly taken by deceased and about which there had been some talk in the community. Defendant wanted to wait and go in the daytime, but deceased insisted on going then. Defendant yielded and went with deceased as requested. Deceased took defendant's gun and carried it on the trip until they came to their destination, the hinges were replaced, and then they started to return; defendant carrying the gun, and deceased leading the way along a path through a wood. When they came to a point where a log was across the path and just after deceased had passed the log, the gun was discharged; the load entering deceased just below the shoulder blade, from which wound death resulted instantly. Defendant, who was the only eyewitness, testified that he stumbled, and that in some unaccountable way the gun was accidentally discharged. Defendant immediately went for help and notified the surrounding neighbors and the wife of deceased. There is nothing in the testimony to indicate that the actions of defendant after the homicide were other than those of an innocent normal man under similar circumstances. The evidence, without conflict, shows friendly and even intimate relations between the two men.

It is not every homicide that is criminal in its nature, and if this homicide occurred as the defendant says it did, the law has no punishment for it. The prosecution realizing this, and further realizing that without more no verdict of guilt would be allowed to stand, sought to show a motive on the part of defendant to take the life of deceased. To do this certain evidence was introduced seeking to show an undue intimacy between defendant and the wife of deceased. If this could be done, beyond a reasonable doubt, the jury might, considering all the other evidence, reach the conclusion, the killing being admitted, that the explanation was fabricated; for if, under the guise of friendship, the defendant had violated the sanctity of deceased's home and had seduced his wife, the motive would be apparent. Under this phase of the case, this evidence, relative to the relations existing between defendant and the wife of deceased, became of the highest importance and should be subjected to the closest scrutiny. In this connection, it may be observed, there is an expression in the testimony of state witness Blackwell, of extreme significance, when he said:

"I just wanted to tell him (referring to Mr. Green, the father of deceased) they have asked everybody in that country out there if they haven't seen John Beard at Arthur Green's house when he wasn't there."

[1] It was competent to prove by the witness McDaniel that on one occasion he had seen defendant at the home of deceased while deceased was absent, and that defendant was in the house; it was competent to prove by Blackwell that he saw defendant and Mrs. Green in the deceased's field near some woods going towards the house; it was competent to prove by Mrs. Lewis that she had seen defendant going to deceased's house in the daytime, where he remained for some two hours in the absence of deceased, and that another time he brought the mule and wagon home and stayed awhile, and that on one occasion defendant had said to witness he thought Mrs. Green the prettiest woman he ever saw. This evidence was admissible in the first instance as tending to show the relationship between defendant and the family of deceased; but, in the absence of any evidence tending to establish an undue intimacy between defendant and the wife of deceased, this testimony could have no probative force sufficient to establish undue intimacy, and should on motion, after the state had failed to connect it with testimony tending to prove a criminal intimacy, have been excluded. The general rule laid down with reference to accusations of this nature is:

"That the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion." Mosser v. Mosser, 29 Ala. 313; Richardson v. Rich-

ardson, 4 Port. 467, 30 Am. Dec. 538; State v. Crawley, 13 Ala. 172; Cook v. State, 17 Ala. App. 347, 85 South. 823.

In Powell v. Powell, 80 Ala. 595, 1 South. 549, where evidence had been introduced of a similar character as that offered here, the court said:

"The circumstances do not lead to the guilt of defendant 'by fair inference as a necessary conclusion,' but are susceptible of a reasonable interpretation consistent with her innocence."

[2] We are of the opinion that the evidence in this case furnished no just foundation for the remark of the solicitor in his closing argument: "Over there (pointing to defendant) is a seducer." The objection to this statement should have been sustained, and the court should have promptly taken action to have impressed the minds of the jury that they must disregard it. In Bean v. State (Ala. App.) 91 South. 499,[1] this court refused to reverse the judgment on account of a remark of the solicitor for want of a proper objection and exception and because no motion for new trial was made. But in this case proper motion for new trial is made and exception reserved.

[3] It is also an illegal argument for the solicitor to say:

"If you convict him and make a mistake, the Court of Appeals or the Supreme Court will correct it; and, if you acquit him, that is the end of it."

The only effect of this argument would be to lead the jury into the mistaken belief that their findings on the facts could be reviewed by a higher tribunal and thereby lessen the sense of responsibility resting on them, and, while the judgment perhaps would not for this alone be reversed, it certainly should weigh in consideration of the motion for new trial.

The defendant should have been granted a new trial on his motion, and for this error the judgment is reversed, and the cause is remanded. Bean v. State, supra.

Reversed and remanded.