22 So.2d 107

## VICE v. STATE.

### 6 Div. 81.

Court of Appeals of Alabama.

Feb. 13, 1945.

Rehearing Denied March 13, 1945.

Beddow, Ray & Jones, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.

**60**

RICE, Judge.

Upon appeals such as this we are governed by the provisions of Code 1940, Title 15, Section 389.

In our consideration of the instant appeal we have endeavored to comply with the terms of the above Code Section. We have read, carefully and critically, the entire record, including the transcript of the testimony filed (in lieu of a bill of exceptions) in accordance with Code 1940—1943 Cumulative Pocket Part—Title 7, Sec. 827(1). And we have, in this connection, carefully considered what is said in the briefs filed here, both on behalf of the State and the appellant.

It is our considered opinion that if there is prejudicial error underlying any ruling apparent—to which exception was reserved or presumed—it is a ruling which has been discussed in the brief filed here by appellant's able and aggressive counsel, and none other.

Hence we will confine our remarks to a seriatim discussion of those matters treated in said brief on behalf of appellant.

Astute counsel, under what they denominate "Statement of the Pleadings," set out what we will use as the basis of our comments, viz.: "The defendant (appellant) was indicted for murder on the 11th day of February, 1943. His plea was not guilty. He was tried by a jury on the 2nd day of November, 1943, and found guilty of murder in the 2nd degree and his punishment fixed at 10 years imprisonment in the penitentiary. Judgment was duly entered upon said verdict and the defendant took his appeal. Motion for new trial was duly filed, and overruled on November 24th, 1943, to which ruling the defendant duly excepted.

"Before entering upon the trial the defendant made separate and several motions aptly challenging the legality constitutionally of the general jury law of local application to Jefferson County, each of which motions were overruled and exception(s) duly taken."

In the beginning we may say that the questions as to the jury law for Jefferson County (Code 1940, Title 62, Sec. 196 et seq.) and all the questions, raised by the motions of appellant just next hereinabove referred to, have just recently been adjudicated adversely to appellant's contentions by our Supreme Court in the case of Burns v. State, 19 So.2d 450.[1] And we need say no more. Code of 1940, Tit. 13, Sec. 95. The trial court overruled said motions without error.

We have thought it unprofitable to make a detailed narration of the testimony; in fact, we are unable to do so, unless we chose to do what able counsel, both for the State and appellant, have omitted in their briefs.

Where there were conflicts—and there were many—respective counsel have contented themselves with detailing only that that was favorable to their respective contentions.

We will say that it is undisputed that appellant shot with a pistol—so that he died—one Travis T. Waits, on the front porch of the home where both appellant and deceased resided—appellant as landlord, and deceased as the tenant of two of the upstairs rooms of the two story building. And that it appears, likewise without conflict in the testimony, that there was some disorder in the plumbing which had caused the appellant to ask deceased and his family, as well as the other people—and there were several—residing upon the upstairs floor of the residence, to desist from using the bathroom, including the toilet, on that floor.

Shortly prior to the occasion of the fatal rencounter, appellant—the toilet in the upstairs bathroom having overflowed, causing water to seep through the floor-ceiling into the room below—went upstairs to investigate.

While in or near the upstairs bathroom—there were two in the house—ordinarily used by all tenants residing upstairs in the home, but which, for reasons stated, was temporarily suspended from use, appellant used some vile language. As his counsel put it, he "was irritated and exasperated at the constantly recurring use of the bathroom upstairs, and in his exasperation, not in the presence of any member of the decedent's family, permitted himself to express himself in a manner naturally to be expected of an old man (he was 61, we interpolate) under those circumstances * * * and that having thus 'let off steam,' he proceeded downstairs."

Deceased, though, with his wife and daughter, while in their rooms, overheard appellant's remarks as he "let off steam," and construed them as applying to them—

[1] 246 Ala. 135.

selves personally. The language used by appellant was, according to the State's testimony, of the vilest.

From our study of the record we conclude that, while appellant, through his counsel, did reserve one or two or more exceptions to rulings admitting testimony of the details of appellant's actions and statements while upstairs, as mentioned, just prior to the fight with deceased—in which deceased was fatally wounded—on the downstairs front porch of the home, yet, as a matter of fact, during the *taking of testimony,* appellant showed no *convincing* intention of excluding said details. Many of same were developed by him.

But if we are in error as to that last remark, it yet clearly appears that appellant was in no way harmed. The learned trial court gave to the jury at appellant's request written charges 9 and 10, which were as follows, viz.: "9. The court charges the jury that the fact, if it be a fact, that the defendant in this case had conducted himself rudely while he was upstairs constituted no justification on the part of the deceased to pursue the defendant downstairs, if he did so pursue him, and assault the defendant on the defendant's own front porch." And "10. The court charges the jury that the fact, if it be a fact, that the defendant may have conducted himself rudely in the hallway upstairs near the rooms occupied by the deceased and his family would not, standing alone, be sufficient to support a finding that the defendant was the aggressor in the affray which resulted, according to the evidence in this case, on the front porch downstairs."

It is our opinion, and we hold, that the details of what occurred to give the deceased offense, while appellant was on this upstairs visit, just prior to the time when deceased uncontradictedly followed appellant down the stairs and out on the front porch and accosted him, were inadmissible in evidence. But, as stated—waiving for the moment the question of whether or not appellant, during the taking of testimony, appeared willing for said details to come out—we think the giving to the jury of appellant's said written requested charges 9 and 10 cured any possible error. So we pass on.

In the course of his argument to the jury, the assistant solicitor prosecuting for the State said: "He (defendant's counsel) would have you believe we would just do anything to get a conviction, even to misquote the law. * * * Well, I am going to tell you something. Those counsel over there can be wrong every time they want and that is all right since the State of Alabama cannot appeal. * * * My next statement is that the State of Alabama through its Solicitor can be wrong only once and the whole case would have to be reversed."

The trial court sustained the defendant's objection to the foregoing argument, and then and there upon his request told the jury: "Gentlemen, of course, argument by counsel with reference to the right of appeal would not be proper and you will not consider that part of the argument or statement by counsel."

Comparable is the situation presented in Oliver v. State, 232 Ala. 5, 166 So. 615, 617. There, our Supreme Court said: "The argument of the solicitor that there was a Governor with pardoning power was likewise improper and excluded. These remarks of the state's counsel were of the class of improper arguments which may be remedied or their evil effects eradicated by instructions of the court," citing Anderson v. State, 209 Ala. 36, 95 So. 171; Bachelor v. State, 216 Ala. 356, 113 So. 67; Peterson v. State, 231 Ala. 625, 166 So. 20.

So we hold that, while the argument by the Assistant Solicitor, quoted—that part referring to the inability of the State to appeal—was improper, yet the action taken by the court completely eradicated any harmful effects flowing from same; and the trial court was not in error in denying the motion for a mistrial filed on account thereof. Authorities, supra.

The case of Beard v. State, 19 Ala.App. 102, 95 So. 333, so confidently relied upon by appellant's counsel, holds nothing contrary to what we have said.

There being no evidence that the witness Marilyn Gaines was examined by the detectives or police officers in any "private chamber," there was no error in the trial court's sustaining the State's objection to the defendant's counsel's argument: "I want to show you something that goes on in the private chamber." Moreover, the words having already been spoken when the objection was made and sustained; and never being excluded from the jury's attention, we are unable to see how appellant was harmed simply by the remarks of the court to the Solicitor: "You have stated your objection and the court sustains it."

■ While it appears that deceased was the aggressor in the fight which caused his death, yet there was ample testimony tending to show that appellant entered willingly into the fight. And deceased being admittedly unarmed, while appellant was armed with a pistol, which he used in shooting the deceased, it was open to the jury to find that appellant was actuated by malice. Hence, despite the long and involved argument by appellant's counsel—addressed to us *exactly* as though we were the *jury* trying the case—there was no error in refusing appellant's written requested charge 13, viz.: "The court charges the jury that under the evidence in this case the jury should not convict the defendant of murder in the second degree."

As a "clincher," apparently, in their argument addressed to this court in their brief filed here, appellant's counsel say:

"It is respectfully submitted that under the undisputed evidence in this case, when the law of this case as given in Charge No. —— by the court is applied thereto, the verdict of the jury was contrary to the substantial evidence and the court below erred in refusing to grant the motion for a new trial.

"In support of this position the appellant assigns the entire brief (some twenty-odd pages) and argument hereinabove set forth.

We do not know what particular charge counsel intended to designate in the "No. ——," above; or whether they intended to indicate all the some twenty-three written charges given at their request.

But answering them, we remark that we have endeavored to treat, categorically, every question they have urged upon us. If they will permit us to say, without offense, that so much and such detailed argument, extraneous to the point raised, is included in, and commingled with, their comments on the law applicable, that it has made it very difficult for us to keep our promise, made near the beginning of this opinion, to make a "seriatim discussion of those matters treated in said brief." But we have done our best.

The case, in its every phase, was one for the jury.

■ We do believe, and have stated, that it was without dispute that the deceased was the aggressor in the fight which caused his death.

But whether or not appellant "fought willingly;" whether or not he used more force than was necessary; these, under the testimony, were questions that could only be answered by the jury. And their verdict was amply supported by the evidence.

Appellant was ably defended; and since we find no prejudicial error to have been committed, the judgment must be affirmed.

It is so ordered.

Affirmed