[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1130 
The defendant was indicted[1] and convicted for theft of property in the first degree. Alabama Code 1975, Section13A-8-3. Sentence was ten years' imprisonment. Six issues are presented on appeal.
 I
Although the defendant cites as error the excusal of Mrs. Mullins from the jury venire, he does not argue this point in brief.
The trial court granted the State's challenge for cause and excused Mrs. Mullins from jury service. In response to a question by defense counsel during his voir dire examination of the jury venire, Mrs. Mullins indicated that she did not wish to sit on the jury because she would "have to sit in judgment of a fellow human being." Under questioning by the State and the trial court, Mrs. Mullins stated that she wouldn't want to sit on any criminal jury and that she might be able to decide guilt or innocence, but she "wouldn't want to be any part of sending anybody to jail." Even when informed that the judge did the sentencing, Mrs. Mullins stated that she would still feel like she would be a part of it and could not participate in any criminal case with a "good conscience". Mrs. Mullins also stated: "I might be able to decide in my mind whether he was guilty or innocent. I don't feel qualified."
Defense counsel objected to the striking of Mrs. Mullins on the ground that "the proper predicate" had not been established.
In Tidmore v. City of Birmingham, 356 So.2d 231, 234
(Ala.Cr.App.), cert. denied, 356 So.2d 234 (Ala. 1978), this Court set out the test for determining whether a venireman should be disqualified because of personal opinions or conscientious scruples. Generally, a juror is incompetent who has such personal opinions with respect to the subject matter of the suit, or conscientious scruples, on any subject, as would influence his verdict. The test to be applied is can the juror eliminate the influence of his scruples and render a verdict according to the evidence. Ordinarily a juror is not disqualified where it appears that he is willing *Page 1131 
to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples. The determination of this question is based on the juror's answers and demeanor and is within the sound discretion of the trial judge. Tidmore. A juror is incompetent whose answers show that he would follow his own views regardless of the instructions of the court.Watwood v. State, 389 So.2d 549, 550 (Ala.Cr.App.), cert. denied, 389 So.2d 552 (Ala. 1980).
After having the law explained to her, that she was not responsible for sentencing the accused, Mrs. Mullins stated that she could not participate in a criminal case with a "good conscience". Upon the responses of Mrs. Mullins, the trial judge properly determined that the State's challenge for cause was due to be granted and that she was incompetent to serve as a juror. The decision of a trial court to disqualify a juror on a challenge for cause is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Motes v. State, 356 So.2d 712 (Ala.Cr.App.), cert. denied, Ex parte Motes, 356 So.2d 720 (Ala. 1977); Baxley v.State, 18 Ala. App. 277, 90 So. 434, cert. denied, Ex parteBaxley, 206 Ala. 698, 90 So. 925 (1921). We find no clear and erroneous abuse of discretion in this case. The fact that another judge or court would not have reached the same legal conclusion as the trial judge in this particular case does not necessarily mean or establish an abuse of discretion.
 II
The defendant argues that the evidence the State introduced regarding venue is inadequate to prove that the crime of theft in the first degree occurred in Jefferson County.
The defendant was employed by Charlie Strong who managed Earl Schieb Auto Paints in Birmingham, which is in Jefferson County. On January 23, 1980, Mr. Strong sent the defendant to Ensley "to do an estimate on a car." This Court takes judicial knowledge and notice that Ensley is in Jefferson County. Hallv. State, 213 Ala. 325, 104 So. 826 (1925); Howard v. State,172 Ala. 402, 55 So. 255 (1911); May v. State, 22 Ala. App. 239,114 So. 423 (1927). He gave the defendant the keys to the chevrolet which Mr. Strong owned and told him to be back in the shop in less than 45 minutes. Mr. Strong never again saw the defendant with his automobile. Mr. Strong learned of the whereabouts of his Chevrolet when he received a telephone call from the Sheriff of Bibb County.
On January 31, 1980, the Bibb County Sheriff's Office arrested the defendant on an unrelated charge. They checked the license tag number of the Chevrolet the defendant admitted driving and discovered that the car had been reported stolen out of Birmingham.
There is no merit to the defendant's contention that there is no evidence that the car was taken by the defendant from the victim in Jefferson County or that the State failed to prove venue.
The issue of whether the defendant had the "intent to deprive" Mr. Strong of his car was for the jury. From the evidence, the jury reasonably concluded that the defendant intended "(t)o withhold property or cause it to be withheld from a person permanently or for such period or under such circumstances that all or a portion of its use or benefit would be lost to him." Alabama Code 1975, Section 13A-8-1 (2), defining the term "deprive".
The defendant obtained or exerted "unauthorized control"[2]
over the automobile when he used the car for a *Page 1132 
purpose other than that for which the car had been entrusted to his care with the requisite intent. "When an offense is committed partly in one county and partly in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, venue is in either county." Alabama Code 1975, Section 15-2-6. See Draughon v. State, 29 Ala. App. 385, 196 So. 290 (1940), where it was held that venue was a question for the jury where, in a prosecution for embezzlement, the accused received money in one county as an agent and failed to deliver the money to his principal whose business place was in another county. Where a crime is begun in one county and consummated in another, venue is in either county. Manson v. State, 349 So.2d 67
(Ala.Cr.App.), cert. denied, 349 So.2d 86 (Ala. 1977).
 III
The defendant maintains that the trial judge abused his discretion in interrogating two witnesses.
The first instance of alleged error occurred when Mr. Strong was on the witness stand. From the record:
 "Q. (ASSISTANT DISTRICT ATTORNEY): Was this defendant included in they?
"A. That's who his father was talking about.
 "MR. TUCKER (Defense Counsel): Judge, I object to whether the defendant was included in they, or whether that statement was ever made.
 "THE COURT: Don't say they. Did the defendant ever state the defendant in talking about they?
 "THE WITNESS: The father knew the defendant had the car.
"MR. TUCKER: See, I object.
 "THE COURT: I don't care what the father knew. I'm sure you don't know what the father knew unless he told you.
"THE WITNESS: He did.
 "THE COURT: Well, that's what we're asking. What did he say about the defendant?
 "THE WITNESS: The defendant said that Timothy had the car. He had been seen. He had even driven it back to his house once or twice and then drove off.
 "MR. TUCKER: Your Honor, that's clearly hearsay evidence. I object and move to exclude.
 "THE COURT: He's laying a predicate just exactly like you were.
 "MR. TUCKER: Your Honor, I asked whether the defendant had made this statement or this statement in substance."
The second instance of alleged error occurred after both sides had completed their examination of the mother of the defendant.
 "THE COURT: I've got some (questions). After that day, did you talk to him while he was down in Centreville at your daughter's house?
"A. No, sir, I didn't go to Centreville.
"THE COURT: I didn't say that.
 "THE COURT: Did you talk to him on the phone or just talk to him while he was in Centreville and you up here?
"THE WITNESS: When he was in Centreville jail?
 "THE COURT: At any time, from the time the car disappeared to the time you heard he was in jail, did you talk to him on the telephone?
"THE WITNESS: I talked to Buddy Vaughn.
 "MR. TUCKER: Judge, I object. I don't know what she's going to say.
 "THE WITNESS: I don't know what she's going to say either. That's exactly why I asked the question.
"MR. TUCKER: We object.
"THE COURT: Who is Buddy Vaughn?
 "THE WITNESS: Buddy Vaughn is the Sheriff of Bibb County, I reckon.
 "THE COURT: Did your son ever call you from Centreville and you talk to him? *Page 1133 
 "THE WITNESS: No, sir, I don't think so. I worked every day.
 "THE COURT: Did you ever tell him that Charlie Strong has got the police looking for him?
 "THE WITNESS: No, sir. Timmy called me at Crumley's Barbeque.
"THE COURT: Timmy. That's one of your sons?
"THE WITNESS: That's Tim over there.
 "THE COURT: Did he ever say to you I'm going to stay down here in Centreville, by the telephone, before he was in jail?
"THE WITNESS: No, sir, not that I know of.
"THE COURT: That's all.
"MR. TUCKER: No further questions."
The testimony of the defendant's mother that the defendant never telephoned her from Centreville contradicted a statement made by the defendant to a Bibb County Deputy Sheriff and already in evidence that he did call his mother from Centreville.
Unless the objection, "Judge, I object, I don't know what she's going to say", can be considered as preserving the issue here presented, initially it must be noted that defense counsel never objected to the court's questioning of the witnesses or to the questions asked by the court. All of his objections were to the answers of the witnesses and were made after the witnesses had answered the judge's questions. There was no specific objection to the fact that the trial judge was asking questions. Without objection, nothing is presented for review.Garner v. State, 364 So.2d 406 (Ala.Cr.App.), cert. denied,364 So.2d 411 (Ala. 1978).
What was stated in Brandes v. State, 17 Ala. App. 390, 391,85 So. 824 (1920), is applicable here.
 "The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with a view that justice may not miscarry."
See also Jones v. State, 292 Ala. 126, 290 So.2d 165 (1974);Rice v. Hill, 278 Ala. 342, 178 So.2d 168 (1965); Garner, supra; Franks v. State, 45 Ala. App. 88, 224 So.2d 924 (1968).
Even though the judge's questions did elicit testimony from a defense witness (the defendant's mother) which conflicted with a portion of a statement the defendant had given the Sheriff's Department, we find no abuse of discretion in the trial judge questioning the witnesses. See Burks v. State, 353 So.2d 539
(Ala.Cr.App. 1977).
 IV
Bibb County Deputy Sheriff Max Vaughn testified that he "ran a check" on the defendant to see if he was wanted anywhere and discovered that the defendant "had an outstanding warrant." The trial court sustained defense counsel's objection, granted his motion to exclude and then, on his own motion, instructed the jury to "disregard that particular warrant."[3] There was no request for additional instructions.
The defendant now contends that the information blurted out by the witness was ineradicable. We disagree and find that *Page 1134 
the error was cured by the actions of the trial court.
There was no request for a mistrial. The defendant has no adverse ruling on this issue simply because the trial court performed every curative measure requested. Error in the admission of evidence of the commission of other offenses by the accused is cured where the trial court sustains the objection, excludes the objectionable testimony and instructs the jury not to consider it. Dockery v. State, 269 Ala. 564,114 So.2d 394 (1959) (in homicide prosecution, evidence that defendant stole witness's automobile in fleeing scene);Franklin v. State, 357 So.2d 364 (Ala.Cr.App.), cert. denied,Ex parte Franklin, 357 So.2d 308 (1978) (in burglary prosecution, evidence that defendant was a "known" burglar was eradicable). While every case must be considered on its own particular facts, there is a legion of other cases and examples supporting this proposition. We find that the error was cured in this instance.
 V
In closing argument, the prosecutor stated: "The defendant reminds me of an octopus." The trial court overruled defense counsel's objection "to characterizing the defendant."
The digest abounds with instances where the prosecutor has commented on the defendant's character or appearance. Hall v.United States, 419 F.2d 582 (5th Cir. 1969) ("hoodlum"); Wrightv. State, 279 Ala. 543, 188 So.2d 272 (1966) ("Judas"); Rogersv. State, 275 Ala. 588, 157 So.2d 13 (1963) ("a slick and slimy crow"); Watson v. State, 266 Ala. 41, 93 So.2d 750 (1957) ("a maniac"); Weaver v. State, 142 Ala. 33, 39 So. 341 (1905) ("beast"); Liner v. State, 350 So.2d 760 (Ala.Cr.App. 1977) ("a rattlesnake" and "a viper"); Jones v. State, 348 So.2d 1116
(Ala.Cr.App.), cert. denied, Ex parte Jones, 348 So.2d 1120
(Ala. 1977) ("a purveyor of drugs"); Kirkland v. State,340 So.2d 1139 (Ala.Cr.App.), cert. denied, Ex parte Kirkland,340 So.2d 1140 (Ala. 1976) ("slippery"); Jeter v. State,339 So.2d 91 (Ala.Cr.App.), cert. denied, 339 So.2d 95 (Ala. 1976), cert. denied, 430 U.S. 978, 97 S.Ct. 1661, 52 L.Ed.2d 366 (1977) ("a flim flam artist"); Cassady v. State, 51 Ala. App. 544, 545,287 So.2d 254 (1973) ("a demon"); Reed v. State, 32 Ala. App. 338,27 So.2d 22, cert. denied, 248 Ala. 196, 27 So.2d 25 (1946) ("lied like a dog running on hot sand"); Williams v. State,22 Ala. App. 489, 117 So. 281 (1928) ("a chicken thief"); Fergusonv. State, 21 Ala. App. 519, 109 So. 764 (1926) ("a smart Aleck);Quinn v. State, 21 Ala. App. 459, 109 So. 368 (1926) ("a wild catter"); Thomas v. State, 19 Ala. App. 187, 96 So. 182, cert. denied, Ex parte Thomas, 209 Ala. 289, 96 So. 184 (1923) ("a moral pervert"); Beard v. State, 19 Ala. App. 102, 95 So. 333
(1923) ("a seducer").
The controlling principles are found in 23A C.J.S. Criminal Law, Section 1102 (1961).
 "Comments by the prosecuting attorney which refer to, and make unfavorable inferences from, the conduct of accused in the course of the transaction for which he is on trial, or his conduct at any other time or place, or which refer to his character as shown by such conduct, or to his background, breeding, or associations, or to other details of his personal history or characteristics are proper, where the purported facts referred to by counsel are supported by competent evidence in the case, and where the inferences and deductions sought to be made from such facts are within the bounds of proper argument. On the other hand, remarks or argument of the prosecuting attorney concerning the character or conduct of accused, which is not supported by the record or which exceeds the limits of fair argument or inference is improper.
 "In a proper case, the prosecuting attorney may characterize accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence in the case, and, where the evidence warrants the belief that accused is guilty, the prosecutor may employ terms appropriate to the nature or degree of turpitude involved in the crime charged; but characterizations *Page 1135 
not justified by the evidence or the charge which the evidence tends to prove, and hence merely abusive, or which are couched in intemperate and inflammatory language are, . . . improper."
See also 6 Am.Jur. Trials, Prosecution Summations 873, 917 (1967).
 "The prosecutor is at liberty to strike hard blows, but he must not strike foul ones; that is, while comment may be made about the defendant or his witnesses, it must be based on the testimony that the defendant or his witnesses gave from the stand or on rational conclusions concerning the defendant or witness that flow from the evidence in the case."
We do not think that the mere characterization of the defendant as an "octopus" is especially likely to stick in the minds of the jurors and influence their deliberations. "The prosecutor, as does defense counsel, has a right to present his impressions from the evidence." McQueen v. State,355 So.2d 407, 411 (Ala.Cr.App. 1978).
The connection in which the prosecutor characterized the defendant as an octopus does not appear. "It cannot be said such remarks would be out of bounds in any and every connection." Brothers v. State, 236 Ala. 448, 453, 183 So. 433
(1938) ("We ought to tear the electric chair down and build a monument to John Dillinger and `Baby Face' Nelson.") The trial court was in position to determine whether this line of argument was within the rule that counsel may draw any inference which the facts tend to support. On the record before us, we cannot, with any degree of reasonable certainty, determine the context in which the remark was made. For this reason, the presumption in favor of the ruling of the trial judge must prevail. Huffman v. State, 360 So.2d 1038
(Ala.Cr.App.), affirmed, 360 So.2d 1045 (Ala. 1977).
 VI
The defendant's contention that the State failed to prove that he was the same Timothy Franklin Barbee who had a prior conviction for grand larceny is without merit and is not supported by the record. Our review convinces us that the trial court properly sentenced the defendant as an habitual offender in accordance with Alabama Code 1975, Section 13A-5-10.
We have searched the record and found no error prejudicial to the substantial rights of the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] Section 13A-8-2 (1) defines the crime of theft of property to include one who "(k)nowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property . . ." Section 13A-8-3 (b) states: The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree. The indictment charged that the defendant "did knowingly obtain or exert unauthorized control over a motor vehicle . . . in violation of Section 13A-8-3 of the Alabama Criminal Code, . . ." No objection was made in the circuit court that the indictment omitted the phrase "with intent to deprive the owner of his property." This issue is not cited as error on appeal.
[2] Alabama Code 1975, Section 13A-8-1 (7):
"Obtains or exerts control or obtains or exerts unauthorized control over property includes but is not necessarily limited to the taking, carrying away or the sale, conveyance or transfer of title to, or interest in, or possession of, property, and includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, larceny by conversion, embezzlement, extortion or obtaining property by false pretenses."
[3] The complete instructions given by the trial judge were: "It is excluded. Ladies and gentlemen, disregard that particular warrant. It has nothing to do with this case at this time, that I know of."